STATE on the relation of C. A. COOK v. O. P. MEARES.

*Quo Warranto—Election to Office—Office Created after Election of Officer.*

1. A person cannot be elected to an office that does not exist at the time of the election; therefore,
2. Where an office was created by an act of the General Assembly passed on the 8th day of March but not ratified until the 12th day of March, an election on the 9th day of March to fill such office was void.

ACTION in the nature of a *quo warranto* on the relation of C. A. Cook against O. P. Meares to test defendant's right to the office of Judge of the Circuit Criminal Court composed of the counties of Craven, New Hanover, Mecklenburg, Vance, Warren, Robeson, Edgecombe and Halifax, heard before *Hoke, J.*, at April Term, 1895, of NEW HANOVER Superior Court.

STATE *ex rel* COOK *v.* MEARES.

The facts appear in the judgment of His Honor, which was as follows:

" This cause came on to heard before His Honor, *W. A. Hoke, Judge,* both parties being present in person and by counsel, and having consented that all questions of law and fact be tried by the Court without the intervention of a jury.

" And thereupon the Court finds the following facts:

" 1. That on the 4th day of March, 1895, an Act to establish a Circuit Criminal Court for New Hanover and other counties passed its three several readings in the Senate of North Carolina, and on the 8th day of March, 1895, passed its three several readings in the House of Representatives.

" 2. That said Act was ratified and signed by the presiding officers of the two houses on March 12th, 1895, and not before.

" 3. That on March 9th, 1895, the House of Representatives resolved that the Senate be notified that at 8 o'clock P. M., on said 9th of March, 1895, the House would be ready to go into an election for Judge of the Eastern Criminal Circuit Court. And on the same day the Senate resolved to concur in the House message. These resolutions were not signed by the presiding officers of the two houses, nor by either of them.

"4. On the evening of March 9th, 1895, an election was held and Chas. A. Cook, relator of plaintiff, received a majority of votes cast.

"5. That on March 11th, 1895, the result of said voting was reported to the Senate, and in that body on said day, Chas. A. Cook was declared elected Judge of the Criminal Court for the Eastern District.

"6. That before the institution of this action the relator

STATE *ex rel* COOK *v.* MEARES.

of the plaintiff, Chas. A. Cook, has taken the oath of office as Judge of the Eastern Criminal Circuit Court.

"7. That after said Act to establish the said Circuit Criminal Court for New Hanover and other counties was duly passed and ratified, the defendant was appointed Judge of said Court by the Governor of North Carolina, and a commission was issued to defendant in due form and said defendant took the oath of office and now holds and exercises the office of Judge of said Court under and by virtue of said appointment and commission.

"And the Court being of opinion upon the foregoing facts that the relator of the plaintiff is not entitled to the said office of Judge of said Circuit Criminal Court for the county of New Hanover and others, but that the defendant is entitled to said office, doth declare and adjudge that the defendant, O. P. Meares, is entitled of right to the office of Judge of the Circuit Criminal Court, composed of the counties of New Hanover and others, and that the plaintiff and his sureties to the prosecution of this action, pay the costs of this action, to be taxed by the Clerk."

From this judgment the relator of plaintiff appealed.

*Messrs. D. L. Russell, L. C. Edwards* and *T. P. Devereux*, for plaintiff (appellant).
*Messrs. Shepherd & Busbee*, for defendant.

FURCHES, J.:  This is an action in the nature of *quo warranto* for the office of Judge of the Circuit Criminal Court composed of the County of New Hanover and others.

It appears that the General Assembly on the 8th of March, 1895, completed the passage of an Act, through both of its Houses, establishing this " Circuit Criminal Court."  But this act was not signed and ratified by the

President of the Senate and Speaker of the House until the 12th of March, 1895. That in this act the Legislature declared there should be one Judge for this criminal district, to be elected by the Legislature. That in pursuance of this legislation it proceeded on the 9th of March to elect the plaintiff Judge of said Court, which vote was reported and confirmed on the 11th of March. And on the 13th of March, the Governor appointed the defendant Judge of said Criminal Court, and he is now occupying the office, and holding the courts. Every question involved in this case is decided in the case of *Ewart* v. *Jones*, at this term, except one. And that is that plaintiff was elected three days before the act was signed by the President of the Senate and the Speaker of the House.

There is no doubt of the plaintiff's being elected, and it is contended that the Legislative will, so clearly expressed, should not be defeated by a mere technicality. It is also said in support of plaintiff's claim that the act of the 12th of March was only a part of the expression of the legislative will. That it is *in pari materia* with the acts of legislation commenced on the 9th and completed on the 11th in reporting and declaring the vote for plaintiff, and that they should be read and construed together. And they say there are precedents in our own legislative history to support plaintiff's claim. That the Legislature of 1876 passed and ratified an act establishing a criminal court for the County of Wake, on the 10th day of March, and on the same day elected George V. Strong to fill the office, that day created. That on the 6th day of March, 1891, the Legislature passed and ratified an act establishing the Court of Railroad Commissioners, and on the same day proceeded to elect the officers to fill the same. And they contend that it is not known whether these acts were signed by the

Speaker and the President of the Senate before or after said elections.

And plaintiff further contends that in March, 1887, the Legislature passed an act proposing an amendment to the Constitution, increasing the number of Associate Justices of the Supreme Court from two to four, which amendment was to be submitted to the people, in November following, for their ratification or rejection; and provided that said vote should be reported to the State Board of Canvassers on the second Thursday thereafter. And if upon a canvass it should be found that a majority of the people voted for said amendment, the Governor should so declare by proclamation. And that he should attach his certificate to the act to that effect, which should be deposited in the office of the Secretary of State. That it was also provided in said act that at the same election, in November, there should be an election held for two Justices to fill the offices " to be created " by said amendment, if it should be adopted. That an election was so held for two Justices, the Constitutional amendment was adopted, and the Justices so elected qualified and took charge of their offices.

And it is contended that these justices were elected when the vote was cast in November, like the plaintiff was on the 9th of March. And that the constitutional amendment did not take effect until the vote was counted and ascertained by the canvassing board, and the Governor's proclamation issued proclaiming its adoption. And that there was no *office* to fill at the election in November, 1888.

While, on the other hand, defendant says that the act of the Legislature on the 9th, electing the plaintiff, and the act passed on the 8th, but not ratified until the 12th, were separate and distinct acts of legislation, and cannot be considered and construed together. That the rule of *pari materia* does not apply. That when plaintiff was elected

on the 9th, there was no such office; and its passing the Legislature on the 8th amounted to nothing until it was signed by the President of the Senate and the Speaker of the House on the 12th of March.

Defendant further says that this Court in *Scarborough* v. *Robinson*, 81 N. C., 409, has decided this. And the case of *Rhodes* v. *Hampton*, 101 N. C., 629, decides that a man cannot be elected to an office when there is no office at the time of the election. And therefore admitting that plaintiff received votes enough to elect him, that he was not elected for the reason that the office was not created for three days thereafter. The only point before the Court in *Scarborough* v. *Robinson* was as to whether the Court could compel Robinson, then Lieut-Governor and President of the Senate, and Moring, Speaker of the House of Representatives, to sign a school bill passed by the Legislature or not, after the Legislature had adjourned. And although this was the only question before the Court for its judgment, the Court proceeded to a lengthy discussion of legislative powers, in the course of which it announced the opinion that an act passed by the Legislature was not a law until it was signed by the presiding officers. We find very respectable authority to the contrary. And without passing on this *dictum* (because it is not necessary we should do so in giving our judgment in this case) we say that it announces a very grave proposition. If what is held in that opinion be true, the Presiding officers of the Legislature are clothed with a veto power greater than that vested in the President of the United States, or in any Governor in any State of the Union. Because, where there has been a veto power vested in the Executive, there is also provision made to pass the Act over his veto, which is not unfrequently done. Here, there is no such power. The Courts will not compel them to sign the Act, and there is no means

provided by which the Legislature can pass it over their refusal to sign. But as we have said, we do not pass upon this question.

In the case of *Rhodes* v. *Hampton, supra,* the point as to whether a party could be elected to an office which did not exist at the time of the election was presented, and the Court held that he could not. And we admit that it was the intention of the Legislature to elect the plaintiff to the office he is claiming in this action. We admit that the point made by defendant is a technical question. We admit that the journals show that George V. Strong was elected on the day the bill establishing the Court was ratified. We admit that the journals show that the Railroad Commissioners, in 1891, were elected the day the bill was ratified. And we admit the two additional Justices were elected at the November election in 1888, and that the amendment creating the offices to which they were elected did not go into effect until some time afterwards—when the Governor so proclaimed. But these all took place when there was harmonious action between the Legislative and Executive departments of the Government. None of them have been tested in the Courts. So they cannot be considered precedents *to control our action.* But in the case of Judge Strong and in the case of the Railroad Commission, as it was all done on the same day, we must presume that it was rightly done, that is, that the Act was ratified before the election took place. And in the case of the Justices of the Supreme Court, their election was provided for in the same Act that provided for the amendment. And this may make the difference between their case and that under consideration. We have said we put out of our consideration in this case the case of *Scarborough* v. *Robinson,* because, this Act creating a Criminal Court was signed and is now the law. So the question presented in

STATE *ex rel* COOK *v.* MEARES.

*Scarborough* v. *Robinson* is not presented here. And we put our judgment on this Act, now the law, which provides that "it shall be in effect from and after its ratification," which is in effect saying that it shall not be in effect before that time, and this is the 12th day of March, 1895, and upon the opinion in *Rhodes* v. *Hampton, supra,* which holds that a party cannot be elected to an office that does not exist at the time of the election. It is better that the intention of the Legislature should be defeated, for a time, than that we should violate the law. We find no error in the judgment appealed from, and the same is affirmed.

CLARK, J. (concurring): It is settled that the Legislature had the power to fill the office created under this act. *Ewart* v. *Jones,* at this term. The statute which is duly and regularly enacted provides that it shall be "in force from and after its ratification." This took place March 12, 1895. Neither on that day or at any time since has the Legislature elected any one to fill the office. The statute provides further that in event of a vacancy the Governor shall appoint till the next session of the General Assembly, which shall then elect to fill the unexpired term. Under this authority the Governor has appointed the defendant, who is now discharging the duties of the office.

The Legislature held a ballot and selected the plaintiff-relator to fill the position on 9th of March, 1895. But at that time by the very terms of the act it was not in force and could not take effect till ratified, which was three days thereafter. There was then no office which could be filled on March 9th. The attempted election to an office which was not yet in existence, was without warrant of law and was practically a merely informal expression of preference upon the part of members. The failure to elect after the act took effect, and the attempted election at a time prior thereto were, it may be supposed, an inadvertence. To fill

an office there must be one already created. If the term of the office is to begin in the future (as in this case, on April 1), it is competent for the Legislature, or other appointing power, to fill it, provided that there has then been such an office created, but not at a time when there is no such office in existence.

By the terms of the statute, the act not taking effect till after its ratification, it is not necessary for us to consider the nature and effect of a ratification. The act itself selects that date as the beginning of the life of this statute. Prior thereto it was to be dead—of no effect—and after that date it was to live, breathe and be effective. By its terms it could not be retrospective and validate a prior election. And as a wise judge has said " we cannot be wiser than the law." We cannot hold that this office was in existence prior to the time when the act creating it took effect. The attempt to fill an office before it is in existence, however inadvertent the attempt, is simply a nullity. *Rhodes* v. *Hampton*, 101 N. C., 629. The Courts have no prerogative to step in and cure inadvertences and non-action on the part of the Legislature. This would be unwarrantable assumption and interference by this co-ordinate department and would lead to far greater evils in cases of supposed or alleged inadvertences and omissions hereafter than the postponement for a few months of legislative action in filling this position.

It has been held in *Scarborough* v. *Robinson*, 81 N. C., 409, SMITH, C. J., that a bill has no validity till duly ratified, which is " an essential pre-requisite to the existence of the statute, which is incomplete and inoperative without it," and in *State* v. *Patterson*, 98 N. C., 660, that a bill "perfected and passed is not a statute till ratified." But even conceding, if we could, that the bill became a law on its third reading in the House on March 8th (it having passed

the Senate previously), or that the ratification when made could refer back and make the act valid at the date of such last reading (a doctrine which has no authority to support it), this would not help the relator, for if the act dated back to the 8th of March it still provides that it was to have no effect till the ratification, which was March 12. In *Commonwealth* v. *Fowler*, 10 Mass., 290, 304, PARSONS, C. J., an act creating a new county provided that it should take effect on a future day named. Before that day the proper appointing power appointed an officer to fill one of the positions (judge of probate) created by the act. The appointment was adjudged void, although a custom of making appointments in such cases was shown. In that case were cited Bacon's Abr. Statute C.; Lord Raymond, 371; and *Rex* v. *Gale*, Plowd., 79, which sustain the proposition that an act which is to take effect at a future day has no force till that time. To like purport are our own decisions, for it was held in *State* v. *Bond*, 49 N. C., 9, that where a statute creating a criminal offence was to take effect at a future day, the specified act, if committed after the passage of the act but before the day it was to take effect, was not indictable under the act. And as to civil matters it was held, DICK, J., in *Merwin* v. *Ballard*, 66 N. C., 398, that, if "the act in express terms is declared to be in force from and after its ratification, it had no operation previous to that day. Statutes must be construed as intended to regulate the future conduct and rights of persons and not to apply to past transactions. A contrary intention must be expressed by the statute." If the present statute, in addition to creating the office of Judge of a Criminal Court, had made certain acts indictable, it is clear that such acts, if committed on March 9, before the ratification on March 12, would not be punishable. Till the day named for the act to go into effect, no rights nor

liabiliates can accrue under it. 23 Am. & Eng. Ency., 218. In *Rhodes* v. *Hampton, supra,* it was held, SMITH, C. J., that the election of a person to an office which did not then exist "was a nullity for the obvious and sufficient reason that there was then no such office to be filled."

To somewhat similar purport are *Kimberlin* v. *State,* 130 Ind., 120 ; 30 Am. St. Rep., 208, which holds that the election of a person to an office held at a time which was not authorized by law is void, and *Brewer* v. *Davis,* 9 Humph., 208 ; 49 Am. Dec., 706, which holds that an election on a different day from that provided by an act erecting a new county is void, and *Sawyer* v. *Haydon,* 1 Nevada, 75, which holds that an election not authorized by law is a nullity.

The above are the few precedents bearing on the point, as the instances have been rare, and they are all against the plaintiff. To say that the Legislature had power to elect, and did elect, is but begging the question. If the election was made without authority of law (the point in issue) it was no election at all.

AVERY, J. (concurring): I concur in the conclusion reached by the Court, but not entirely in the reasons upon which it is made to rest. While much of the discussion in *Scarborough* v. *Robinson,* 81 N. C., 409, was entirely *obiter,* the Court construed a clause of the Constitution (Art. II, Sec. 23) as making ratification an essential prerequisite to the validity of an act of the Legislature, and the decision of the question involved depended upon that construction. The purpose of the plaintiff in bringing that action was either to have a declaration from the Court that the bill should, in view of the facts shown, be deemed to have the force and effect of an act passed and ratified in the ordinary way or that the presiding officer should be required to sign.

It seems to me that the Court did not transcend the proper limit of logical argument in discussing and passing upon the questions whether it was competent for the defendant to still impart vitality to an inchoate act or whether, if the compulsory power of the Court could not be invoked for such a purpose, it could nevertheless declare that under the peculiar circumstances, the unsigned bill should be deemed a complete legislative enactment.