J. ARTHUR POPE, PLAINTIFF v. MICHAEL EASLEY, GOVERNOR OF NORTH CAROLINA, AND ROY COOPER, ATTORNEY GENERAL OF NORTH CAROLINA, DEFENDANTS, AND LORETTA C. BIGGS, HUGH B. CAMPBELL, JR., AND ALBERT S. THOMAS, JR., ADDITIONAL DEFENDANTS

No. 206PA01

(Filed 18 December 2001)

### Judges— additional Court of Appeals judgeships—unconstitutional initial terms—severability

The General Assembly's addition of three new Court of Appeals judgeships in 2000 Sess. Laws, ch. 67, sec. 15.5(a) was constitutionally permissible under N.C. Const. art. IV, § 7, but the provision of section 15.5(a) making the creation of the new judgeships effective upon gubernatorial appointment and allowing appointees to serve initial terms of four years violates the requirement of N.C. Const. art. IV, § 19 that judicial appointees hold their places only until the next election for members of the General Assembly. However, the portion of section 15.5(a) that established the term of office was severable from the portion that created the judgeships. Since section 15.5(a) operated to create vacancies at the Court of Appeals, the three new Court of Appeals seats are required to be placed on the ballot for the 2002 election cycle.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an order and judgment entered on 14 February 2001 by Farmer, J., in Superior Court, Wake County. Heard in the Supreme Court 10 September 2001.

*Stam, Fordham & Danchi, P.A., by Paul Stam, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Grayson G. Kelley, Senior Deputy Attorney General, for defendant-appellants and -appellees Easley and Cooper and additional defendant-appellants and -appellees Biggs and Campbell.*

*Boyce & Isley, PLLC, by Eugene Boyce and Laura Boyce Isley, for additional defendant-appellant and -appellee Thomas.*

PER CURIAM.

On 30 June 2000, the General Assembly of North Carolina enacted, and the Governor of North Carolina signed into law, Session Law 2000-67, which authorized, among other things, the expansion of the North Carolina Court of Appeals from twelve to fifteen judges. Act of June 30, 2000, ch. 67, sec. 15.5, 2000 N.C. Sess. Laws 197, 371-72. Section 15.5.(a) of the ratified bill, adding a new, sixth paragraph to N.C.G.S. § 7A-16, provides, in part, as follows:

On or after December 15, 2000, the Governor shall appoint three additional judges to increase the number of judges to 15. *Each judgeship shall not become effective until the temporary appointment is made, and each appointee shall serve from the date of qualification until January 1, 2005. Those judges' successors shall be elected in the 2004 general election and shall take office on January 1, 2005, to serve terms expiring December 31, 2012.*

Ch. 67, sec. 15.5.(a), 2000 N.C. Sess. Laws at 371 (emphasis added).

Plaintiff, a member of the House of Representatives of the General Assembly, initiated this action on 4 December 2000 against Governor James B. Hunt, Jr. and Attorney General Michael Easley in their official capacities. Plaintiff sought a declaration that section 15.5.(a) conflicts with the North Carolina Constitution by establishing four-year temporary initial terms of office for the three new Court of Appeals judges, that the future judicial appointees could not lawfully hold office, and that the appropriated funds could not be spent to support the new judgeships. Plaintiff also requested that the Governor be enjoined from issuing commissions for the new judgeships.

On 14 December 2000, the trial court denied plaintiff's motion for a preliminary injunction. On 5 January 2001, Governor Hunt appointed Loretta C. Biggs, Hugh B. Campbell, Jr., and Albert S. Thomas, Jr. to the newly created seats on the Court of Appeals. On 18 January 2001, plaintiff filed a motion to amend his complaint to add the three newly appointed judges as additional defendants. Plaintiff also moved to substitute the newly elected Governor and Attorney

General for the original defendants holding such offices. The trial court allowed these motions on 5 February 2001.

In an order and judgment entered 14 February 2001, the trial court determined that, while the General Assembly's expansion of the Court of Appeals was constitutionally permissible, its creation of four-year temporary initial judgeship terms in section 15.5.(a) was inconsistent with the North Carolina Constitution. The trial court further ruled the portion of section 15.5.(a) that established the term of office was severable from the portion that created the judgeships. By severing the portion establishing four-year initial terms, the trial court purported to transform the newly created judicial seats into vacancies. The trial court ordered these vacancies to be filled according to the provisions of Article IV, Section 19 of the North Carolina Constitution and N.C.G.S. § 163-9. This outcome established initial temporary terms of two years rather than four years, requiring the three new Court of Appeals seats to be placed on the ballot in the 2002 election cycle rather than, as provided by the General Assembly in section 15.5.(a), the 2004 election cycle.

On 14 March 2001, plaintiff and additional defendant Thomas each filed notices of appeal. On 26 March 2001, defendants Easley and Cooper and additional defendants Biggs and Campbell filed a notice of appeal. On 10 April 2001, the parties filed a joint petition for discretionary review prior to determination in the Court of Appeals, which was allowed by this Court on 3 May 2001.

At the outset, we observe that acts of the General Assembly are accorded a strong presumption of constitutionality. *State ex rel. Martin v. Preston*, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989). The Constitution of North Carolina is not a grant of power; rather, the power remains with the people and is exercised through the General Assembly, which functions as the arm of the electorate. *McIntyre v. Clarkson*, 254 N.C. 510, 515, 119 S.E.2d 888, 891-92 (1961). An act of the people's elected representatives is thus an act of the people and is presumed valid *unless it conflicts with the Constitution. Id.*

Our task, therefore, is to determine whether the General Assembly's creation of three additional Court of Appeals judgeships, effective upon appointment by the Governor, with initial appointive terms of approximately four years, exceeded the limitations of the North Carolina Constitution. We hold that the General Assembly's enactment of section 15.5.(a) created three new judgeships, vacant

upon creation, and therefore, such positions must be filled consistent with the limitations of Article IV, Section 19.

Article IV, Section 19 of the North Carolina Constitution states that "all vacancies occurring in the offices provided for by this article [including judges of the Court of Appeals] shall be filled by appointment of the Governor, and the appointees shall hold their places until the next election for members of the General Assembly that is held more than 60 days after the vacancy occurs, when elections shall be held to fill the offices." In an apparent effort to avoid this specific constitutional limitation, the General Assembly utilized two clauses in the legislation in question. *See* ch. 67, sec. 15.5.(a), 2000 N.C. Sess. Laws at 371-72. First, section 15.5.(a) declared that "[e]ach judgeship shall not become effective until the temporary appointment is made." This language purported to make the effective creation of the new judgeships contemporaneous with appointment—thus sidestepping the constitutional requirements for vacancies in judicial office. *See* N.C. Const. art. IV, § 19. However, as noted in the concurring opinion of Justice Walter Clark in *Cook v. Meares*, 116 N.C. 582, 589-90, 21 S.E. 973, 975 (1895), in order "[t]o fill an office there must be one already created. If the term of the office is to begin in the future . . . , it is competent for the legislature, or other appointing power, to fill it, provided that there has then been such an office created, but not at a time when there is no such office in existence." Thus, any legislative attempt to *not* create the office of Judge of the Court of Appeals *until* the Governor made his appointment simply cannot occur because the office must exist before it can be filled.

Second, section 15.5.(a) states that "each appointee shall serve from the date of qualification until January 1, 2005." This language appears to circumvent the specific provision of Article IV, Section 19 that requires judicial appointees to run at the next general election for members of the General Assembly (in this case, November 2002). As the statutory language clearly results in a term of office for appointees that does not—and cannot—comply with the two specific terms of office for judges provided for in the Constitution—an eight-year elected term, in Article IV, Section 16, and an appointive term requiring the appointee to run in the next even-year election, in Article IV, Section 19—it may not stand. While the General Assembly has the constitutional authority to determine the "structure, organization, and composition of the Court of Appeals," *see* N.C. Const. of 1868, art. IV, § 6A (1965) (amended by Act of July 2, 1969, ch. 1258, sec. 1, 1969 N.C. Sess. Laws 1461, 1471, and ratification by the people

on 3 November 1970; recodified as Section 7 in similar form in the North Carolina Constitution of 1971), the General Assembly may not bypass the express provision in Article IV, Section 19 of the North Carolina Constitution by delaying the effective date for the judgeships in question until the moment of appointment by the Governor.

Finally, it is necessary for us to determine whether the trial court properly severed the unconstitutional part of section 15.5.(a): "Each judgeship shall not become effective until the temporary appointment is made, and each appointee shall serve from the date of qualification until January 1, 2005. Those judges' successors shall be elected in the 2004 general election and shall take office on January 1, 2005, to serve terms expiring December 31, 2012." Session Law 2000-67 contains a severability clause, section 28.4, which provides: "If any section or provision of this act is declared unconstitutional or invalid by the courts, it does not affect the validity of this act as a whole or any part other than the part so declared to be unconstitutional or invalid." Ch. 67, sec. 28.4, 2000 N.C. Sess. Laws at 440. The test for severability is whether the remaining portion of the legislation can stand on its own and whether the General Assembly would have enacted the remainder absent the offending portion. *See, e.g., Jackson v. Guilford Cty. Bd. of Adjust.*, 275 N.C. 155, 168, 166 S.E.2d 78, 87 (1969) ("When the statute, . . . [can] be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone."). Additionally, the inclusion of a severability clause within legislation will be interpreted as a clear statement of legislative intent to strike an unconstitutional provision and to allow the balance to be enforced independently. *Fulton Corp. v. Faulkner*, 345 N.C. 419, 421, 481 S.E.2d 8, 9 (1997).

The inclusion of section 28.4 evinces a clear legislative intent to allow the remaining portion of section 15.5.(a) to stand. *See id.* Furthermore, the balance of section 15.5.(a), "On or after December 15, 2000, the Governor shall appoint three additional judges to increase the number of judges to 15," can be enforced independently of the unconstitutional portions of the section. *See* N.C. Const. art. IV, § 7. We conclude, therefore, that under the *Jackson* test, the trial court properly severed the offending provision and allowed the portion creating the judgeships to stand.

In summary, the General Assembly enacted section 15.5.(a), which added a new, sixth paragraph to N.C.G.S. § 7A-16, pursuant to its power to determine the "structure, organization, and composition of the Court of Appeals." *See* N.C. Const. art. IV, § 7. This legislative enactment is presumed valid unless it conflicts with the North Carolina Constitution. *McIntyre*, 254 N.C. at 515, 119 S.E.2d at 891-92. Pursuant to our power of judicial review, *Bayard v. Singleton*, 1 N.C. 5 (1787), we hold that in enacting the provisions making the creation of the new judgeships effective upon gubernatorial appointment and allowing the appointees to serve for nearly four years before facing election, the General Assembly devised a statutory framework that does not comport with the constitutional limitation requiring that judicial appointees hold their places only until the next election for members of the General Assembly. *See* N.C. Const. art. IV, § 19. The remaining portion of section 15.5.(a), i.e., the provision creating three new Court of Appeals judgeships, was constitutionally permissible, N.C. Const. art. IV, § 7, and is severable from the unconstitutional provisions. *See Jackson*, 275 N.C. at 168, 166 S.E.2d at 87.

We therefore affirm the trial court's determination that the addition of three new Court of Appeals judgeships under section 15.5.(a) was constitutionally permissible. Additionally, we affirm the trial court's conclusion that section 15.5.(a) operated to create a vacancy at the Court of Appeals, thereby requiring an election to fill the vacancy in the 2002 election cycle. Accordingly, the order of the trial court is affirmed.

AFFIRMED.