PER CURIAM.
 

 *190
 
 Roy A. Cooper, III, in his official capacity as Governor of the State of North Carolina, appeals from an order of a three-judge superior court panel, which granted summary judgment in favor of Phillip E. Berger and Timothy K. Moore, in their official capacities, respectively, as President Pro Tempore of the North Carolina Senate and as Speaker of the North Carolina House of Representatives (collectively, "the General Assembly"). The order is affirmed.
 

 *191
 

 I. Background
 

 On 8 November 2016, a majority of North Carolina voters elected Roy A. Cooper, III as Governor, who took his oath of office and whose term commenced on 1 January 2017. On 16 December 2016, the General Assembly duly enacted Session Laws 2016-125 (Senate Bill 4) and 2016-126 (House Bill 17), which were signed into law by the current Governor, Patrick L. McCrory, and became effective immediately.
 

 On 30 December 2016, Mr. Cooper, while continuing to serve as the duly elected Attorney General of North Carolina, and while the sitting Governor remained in office, filed a complaint in his capacity as "Governor-elect," sought a temporary restraining order, and a temporary injunction in the Wake County Superior Court, and asserted the statutory amendments set forth in Session Law 2016-125 were unconstitutional. On the same day, the trial court granted a temporary restraining order, enjoining the challenged portions of Session Law 2016-125 before they went into effect.
 

 The Chief Justice of the North Carolina Supreme Court convened and assigned a three-judge superior court panel to hear the constitutional challenges to Session Law 2016-125. On 6 January 2017, the panel preliminarily enjoined the challenged portions of Session Law 2016-125, pending a final determination on the merits.
 

 Governor Cooper filed an amendment to his complaint on 10 January 2017 and raised constitutional challenges to Part III of Session Law 2016-126 (the "Advice and Consent Amendment") and the portions of Sections 7 and 8 of Part I of Session Law 2016-126 codified at
 
 N.C. Gen. Stat. § 126-5
 
 (d)(2c) (the "Exempt Positions Amendments"). The superior court conducted a hearing on the merits of his claims on 7 March 2017.
 

 On 17 March 2017, the trial court panel entered summary judgment in favor of the General Assembly and rejected the Governor's challenge to the Advice and Consent Amendment set forth in Session Law 2016-126. The panel found "[a]dvice and consent is an exclusive function of the legislative branch." The panel further found the executive appointees at issue "are the most important appointments a Governor makes, as they are appointed to lead the State's principal departments, said departments having been created by act of the legislative branch."
 

 The panel further found:
 

 6. A Legislature that has the authority to create executive agencies also has the authority to require legislative
 
 *192
 
 advice and
 
 *178
 
 consent to fill the leadership roles in those agencies, absent constitutional limitations to the contrary.
 

 7. No applicable constitutional limitation on such appointment power exists in our constitution.
 

 8. "The will of the people [ ] is exercised through the General Assembly, which functions as the arm of the electorate. An act of the people's elected representatives is thus an act of the people and is presumed valid
 
 unless it conflicts with the Constitution
 
 ."
 
 Pope v. Easley
 
 , 354 N.C. at 546, 556 S.E.2d at 267 (emphasis in original).
 

 9. A statute "must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground."
 
 Rowlette v. State
 
 ,
 
 188 N.C. App. 712
 
 , 715,
 
 656 S.E.2d 619
 
 , 621 (2008) (citations omitted).
 

 10. The Plaintiff has made no evidentiary showing that the Advice and Consent provision will result in a violation of the separation of powers provision of the North Carolina Constitution.
 

 The panel concluded although the Constitution is "silent as to advice and consent of Statutory officers ... Article III, Section 5(8) does not prohibit the General Assembly from appointing statutory officers." The panel further concluded Article III, Section 5(8) does not, "beyond a reasonable doubt, restrict the General Assembly's advice and consent power as to statutory appointees;" it "permits advice and consent at the highest level of constitutional office but is not a limitation of advice and consent;" and it "does not limit the General Assembly to advice and consent on only constitutional officers." (Emphasis omitted).
 

 The panel determined our Constitution "does not prohibit a law establishing senatorial advice and consent over the appointments of the Governor to the heads of principal state departments," and the Advice and Consent Amendment does not violate the separation of powers clause of our Constitution.
 

 The Governor appeals the entry of summary judgment in favor of the General Assembly on the constitutionality of the Advice and Consent Amendment.
 

 *193
 

 II. Jurisdiction
 

 Jurisdiction lies from appeal of a final judgment of the superior court on the claims asserted in the Governor's amended complaint pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2015).
 

 III. Issues
 

 The Governor argues the trial court panel erred by granting summary judgment in favor of the General Assembly and rejecting his challenge to the Advice and Consent Amendment, and asserts the Advice and Consent Amendment violates the separation of powers clause of the Constitution of North Carolina. N.C. Const. art. I, § 6.
 

 IV. Standard of Review
 

 "We review a trial court's order granting or denying summary judgment
 
 de novo
 
 . Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (citations and internal quotation marks omitted).
 

 "We review constitutional questions
 
 de novo
 
 ."
 
 State ex. rel. McCrory v. Berger
 
 ,
 
 368 N.C. 633
 
 , 639,
 
 781 S.E.2d 248
 
 , 252 (2016) (citing
 
 Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.
 
 ,
 
 353 N.C. 343
 
 , 348,
 
 543 S.E.2d 844
 
 , 848 (2001) ).
 

 "In exercising
 
 de novo
 
 review, we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond reasonable doubt."
 
 Id
 
 . (citations omitted).
 

 In other words, the constitutional violation must be plain and clear. To determine whether the violation is plain and clear, we look to the text of the constitution, the historical context in which the people of North Carolina adopted the applicable constitutional provision, and our precedents.
 

 Id
 
 . (citations omitted).
 

 The parties conceded at oral argument that all cabinet secretaries and other appointees nominated by the Governor, who are
 
 *179
 
 subject to the Advice and Consent Amendment, were approved by the Senate. As such, any asserted as-applied constitutional challenge to the Advice and Consent Amendment is moot.
 
 See
 

 Town of Beech Mtn. v. Genesis Wildlife Sanctuary, Inc
 
 ., --- N.C. App. ----, ----,
 
 786 S.E.2d 335
 
 , 347 (2016),
 
 aff'd
 
 ,
 
 369 N.C. App. 722
 
 ,
 
 799 S.E.2d 611
 
 (2017) ("The basic distinction is
 
 *194
 
 that an as-applied challenge represents a plaintiff's protest against how a statute was applied in the particular context in which plaintiff acted or proposed to act, while a facial challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context.")
 

 "[A] facial challenge to the constitutionality of an act, as plaintiffs have presented here, is the most difficult challenge to mount successfully."
 
 Hart v. State
 
 ,
 
 368 N.C. 122
 
 , 131,
 
 774 S.E.2d 281
 
 , 288 (2015) (citation omitted). "We seldom uphold facial challenges because it is the role of the legislature, rather than this Court, to balance disparate interests and find a workable compromise among them."
 
 Id
 
 . (citation omitted).
 

 The complaint was filed on 30 December 2016, prior to the date Governor Cooper took his oath of office. The General Assembly has not challenged the trial court's finding that "[t]he Governor has standing to raise the[se] arguments" as a real party in interest under N.C. Gen. Stat. § 1A-1, Rule 17 (2015). Presuming,
 
 arguendo
 
 , the Governor possessed standing to bring suit, while he continued to serve as the elected Attorney General, to challenge a duly enacted law of the General Assembly prior to his oath as Governor on 1 January 2017, we review the Governor's facial constitutional challenge to the Advice and Consent Amendment.
 

 V. Advice and Consent Amendment
 

 The Advice and Consent Amendment, as set forth in Session Law 2016-126, amended N.C. Gen. Stat. § 143B-9. This statute pertains to the Governor's appointments of the "head of each principal State department," and states:
 

 For each head of each principal State department covered by this subsection, the Governor shall notify the President of the Senate of the name of each person to be appointed, and the appointment shall be subject to senatorial advice and consent in conformance with Section 5(8) of Article III of the North Carolina Constitution unless (i) the senatorial advice and consent is expressly waived by an enactment of the General Assembly or (ii) a vacancy occurs when the General Assembly is not in regular session. Any person appointed to fill a vacancy when the General Assembly is not in regular session may serve without senatorial advice and consent for no longer than the earlier of the following:
 

 (1) The date on which the Senate adopts a simple resolution that specifically disapproves the person appointed.
 

 *195
 
 (2) The date on which the General Assembly shall adjourn pursuant to a joint resolution for a period longer than 30 days without the Senate adopting a simple resolution specifically approving the person appointed.
 

 N.C. Sess. Law 2016-126.
 

 Article III, Section 5(8) of the Constitution of North Carolina provides: "Appointments: The Governor shall nominate and by and
 
 with the advice and consent
 
 of a majority of the Senators appoint all officers whose appointments are not otherwise provided for." N.C. Const. art. III, § 5 (8) (emphasis supplied).
 

 The separation of powers clause of the Constitution of North Carolina declares that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. The separation of powers clause is violated "when one branch exercises power that the constitution vests exclusively in another branch" or "when the actions of one branch prevent another branch from performing its constitutional duties."
 
 McCrory
 
 , 368 N.C. at 645,
 
 781 S.E.2d at 256
 
 .
 

 The Governor argues the Advice and Consent Amendment permits the Senate's review of and consent to his appointments of persons to serve as his immediate deputies, the cabinet secretaries. He asserts it violates the separation of powers clause by interfering
 
 *180
 
 with the Governor's faithful execution of the law and the executive power to select deputies, who will promote and implement the Governor's policies the voters elected him to pursue.
 
 See
 
 N.C. Const. art. III, § 5 (4) (conferring upon the Governor the duty to "take care that the laws be faithfully executed").
 

 The Governor further argues, presuming
 
 arguendo
 
 the General Assembly's power includes the power to exercise advice and consent over some executive officers, "the exercise of such a power over the Governor's cabinet secretaries goes too far." The Governor asserts the cabinet secretaries are not simply members of an executive branch commission or board. Rather, he asserts they possess significant authority as the most senior executive officials, who receive their appointments directly from the Governor.
 

 Separation of powers issues are not analyzed within a vacuum or by an absolute bright line within a working government.
 
 See
 

 United States v. Brainer
 
 ,
 
 691 F.2d 691
 
 , 697 (4th Cir. 1982). "The perception of the separation of three branches of government as inviolable, however, is an ideal not only unattainable but undesirable. An overlap of powers
 
 *196
 
 constitutes a check and preserves the tripartite balance, as two hundred years of constitutional commentary note."
 
 In re Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. 84
 
 , 96,
 
 405 S.E.2d 125
 
 , 131 (1991).
 

 Asserted separation of powers violations are analyzed on a case-by-case basis with a flexible and pragmatic approach.
 
 See
 

 McCrory
 
 , 368 N.C. at 646,
 
 781 S.E.2d at 257
 
 (courts "cannot adopt a categorical rule that would resolve every separation of powers challenge to the legislative appointment of officers"). Disagreements between coordinate branches of government regarding overlaps and exercises of authority have and will continue to occur.
 
 See
 

 Brainer
 
 ,
 
 691 F.2d at 697
 
 .
 

 The Governor relies heavily upon our Supreme Court's decision in
 
 McCrory
 
 , which involved a constitutional challenge to legislation which authorized the General Assembly to appoint a majority of the voting members to the Oil and Gas Commission, the Mining Commission, and the Coal Ash Management Commission.
 
 Id.
 
 at 636-37,
 
 781 S.E.2d at 250-51
 
 .
 

 The Court first determined whether the appointments clause in Article III, Section 5(8) prohibits the General Assembly from appointing statutory officers.
 
 Id
 
 . at 639,
 
 781 S.E.2d at 252
 
 . Following a lengthy historical analysis of Article III, Section 5(8), the Court held that the appointments "clause gives the Governor the
 
 exclusive authority
 
 to appoint
 
 constitutional officers
 
 whose appointments are not otherwise provided for by the constitution. The appointments clause does not prohibit the General Assembly from appointing statutory officers to administrative commissions."
 
 Id
 
 . at 639-40,
 
 781 S.E.2d at 252
 
 (emphasis supplied).
 

 The Court in
 
 McCrory
 
 next determined whether the challenged legislation violated the separation of powers clause by preventing the Governor from performing his constitutional duties.
 
 Id
 
 . at 644,
 
 781 S.E.2d at 255
 
 . The Court analyzed whether the actions of the legislature "unreasonably disrupte[d] a core power of the executive."
 
 Id
 
 . at 645,
 
 781 S.E.2d at 256
 
 . The Court determined the three commissions at issue possessed "final executive authority," and the "Governor must have enough control over them to perform his constitutional duty [under Article III, Section 5(4) ]."
 
 Id
 
 . at 646,
 
 781 S.E.2d at 256
 
 .
 

 The Court held:
 

 [T]he challenged appointment provisions violate the separation of powers clause. When the General Assembly appoints executive officers that the Governor has little
 
 *197
 
 power to remove, it can appoint them essentially without the Governor's influence. That leaves the Governor with little control over the views and priorities of the officers that the General Assembly appoints. When those officers form a majority on a commission that has the final say on how to execute the laws, the General Assembly, not the Governor, can exert most of the control over the executive policy that is implemented in any area of the law that the commission regulates. As a result, the Governor cannot take care that the laws are faithfully executed in that area. The separation of powers clause plainly and clearly does not allow the General Assembly to take this much control over the
 
 *181
 
 execution of the laws from the Governor and lodge it with itself.
 

 Id
 
 . at 647,
 
 781 S.E.2d at 257
 
 .
 

 In
 
 McCrory
 
 , the legislation authorized the General Assembly, not the Governor, to appoint the majority of members to three committees exercising "final executive authority[.]"
 
 Id
 
 . at 646,
 
 781 S.E.2d at 256
 
 . That issue is not present here.
 

 Session Law 2016-126 authorizes the Governor to appoint the cabinet secretaries, "subject to senatorial advice and consent in conformance with Section 5(8) of Article III of the North Carolina Constitution[.]" Under the holding in
 
 McCrory
 
 , the Governor does not have the exclusive authority to appoint "statutory officers to administrative commissions."
 
 Id
 
 . at 639-40,
 
 781 S.E.2d at 252
 
 (emphasis omitted).
 

 Our Supreme Court has also held:
 

 [T]he inhibition on the legislative power to appoint to office is removed and the inherent power of the Governor to appoint is restricted to constitutional offices and where the Constitution itself so provides. Accordingly, it has since been the accepted view that, in all offices created by statute, including these directorates and others of like nature, the power of appointment, either original or to fill vacancies, is subject to legislative provision as expressed in a valid enactment.
 

 State ex rel. Salisbury v. Croom
 
 ,
 
 167 N.C. 223
 
 , 226,
 
 83 S.E. 354
 
 , 355 (1914) (citing
 
 Cherry v. Burns
 
 ,
 
 124 N.C. 761
 
 ,
 
 33 S.E. 136
 
 (1899) ;
 
 Cunningham v. Sprinkle
 
 ,
 
 124 N.C. 638
 
 ,
 
 33 S.E. 138
 
 (1899) ).
 

 *198
 
 "The Constitution of North Carolina is not a grant of power; rather, the power remains with the people and is exercised through the General Assembly, which functions as the arm of the electorate."
 
 Pope v. Easley
 
 ,
 
 354 N.C. 544
 
 , 546,
 
 556 S.E.2d 265
 
 , 267 (2001) (citing
 
 McIntyre v. Clarkson
 
 ,
 
 254 N.C. 510
 
 , 515,
 
 119 S.E.2d 888
 
 , 891-92 (1961) ). "An act of the people's elected representatives is thus an act of the people and is
 
 presumed valid unless it conflicts with the Constitution
 
 ."
 
 Id
 
 . (emphasis supplied) (citing
 
 McIntyre
 
 ,
 
 254 N.C. at 515
 
 ,
 
 119 S.E.2d at
 
 891-92 );
 
 see also
 

 Lassiter v. Northampton Cty. Bd. of Elections
 
 ,
 
 248 N.C. 102
 
 , 112,
 
 102 S.E.2d 853
 
 , 861 (1958),
 
 aff'd
 
 ,
 
 360 U.S. 45
 
 ,
 
 79 S.Ct. 985
 
 ,
 
 3 L.Ed.2d 1072
 
 (1959).
 

 VI. Conclusion
 

 Article III, Section 5(8) of our Constitution confers upon the Governor the exclusive authority to appoint constitutional officers subject to limitations in Article III, Section 5(8).
 
 See
 

 McCrory,
 

 368 N.C. at 639-40
 
 ,
 
 781 S.E.2d at 252
 
 . The three-judge superior court panel correctly held the Governor did not meet the high burden to show beyond a reasonable doubt the General Assembly is without authority to require senatorial confirmation of the Governor's appointed statutory officers. The Governor's facial constitutional challenge to the amendment to the statute fails.
 

 The three-judge superior court also correctly held the Governor failed to show beyond a reasonable doubt that the Advice and Consent Amendment violates the separation of powers clause of the Constitution of North Carolina by hindering the faithful execution of his duties as Governor.
 

 While a provision of the Constitution mandates separation of powers between the branches, N.C. Const. art. I, § 6, another provision also reserves to the Senate "the advice and consent" of the Governor's appointments of constitutional officers. N.C. Const. art III, § 5 (8). If separation of powers does not prohibit or constrain the Senate from confirming officers created by the Constitution, separation of powers does not otherwise prohibit "advice and consent" being applied to gubernatorial appointees over agencies the General Assembly created, and which agencies can be amended or repealed by statute. "[A] constitution cannot violate itself."
 
 Leandro v. State
 
 ,
 
 346 N.C. 336
 
 , 352,
 
 488 S.E.2d 249
 
 , 258 (1997).
 

 "The Constitution of North Carolina is not a grant of power; rather, the power remains with the people and is exercised through the General Assembly, which functions as the arm of the electorate."
 
 Pope
 
 ,
 
 354 N.C. at 546
 
 ,
 
 556 S.E.2d at 267
 
 .
 

 *182
 

 *199
 
 The order appealed from is affirmed.
 
 It is so ordered
 
 .
 

 AFFIRMED.
 

 Panel Consisting of: Elmore, Stroud, and Tyson, JJ.