PEOPLE OF N. C. *ex rel.* WELKER and others *v.* BLEDSOE and others.

THE PEOPLE OF N. C. *ex rel.* G. W. WELKER and others *v.* M. A. BLED-
SOE and others.

The Trustees of the University, the Directors of the Penitentiary, of the Luna-
tic Asylum and of the Institution for the Deaf and Dumb and the Blind,
are public officers.

The act of the General Assembly, entitled, "An Act for the better government
of the Penitentiary," ratified the 1st day of April, 1871, violates section 10 of
article 3 of the Constitution, and is therefore void.

By virtue of article 3, section 10 of the Constitution, the Governor shall nomi-
nate, and by and with the advice and consent of a majority of the Senators
elect, appoint the Directors of the Penitentiary, and such other officers as
are therein prescribed.

(*Clark* v. *Stanley*, 66 N. C. Rep., cited and approved.)

CIVIL ACTION, in the nature of a *quo warranto*, to deter-
mine who constitute the proper and legal "Board of Direc-
tors of the Penitentiary," heard and determined by his
Honor, *Watts, J.,* at Fall Term, 1872, of WAKE Superior
Court.

The facts agreed and submitted to his Honor in the Court
below, are substantially the following:

1. That on the 1st day of March, 1872, the relators were
appointed by the Governor of the State to the office of "The
Board of Directors of the Penitentiary," that they accepted
said office, and were duly qualified thereto, and took upon
themselves the performance of the duties thereof, and claim
that they are entitled to receive the emoluments of the
same; and that immediately upon their acceptance of said
office, and before the commencement of this action, they
notified the defendants thereof, and demanded of them that
they should relinquish and surrender to the relators, all
books, papers, money and effects belonging and pertaining
to said office, with which demand, the defendants refused
and still refuse to comply.

2. That by an act of the General Assembly, entitled "An
act for the better government of the Penitentiary," ratified

the 1st day of April, 1871, said defendants were appointed a Board of Directors for said Penitentiary, that they accepted said appointment, qualified thereto and took upon themselves the burden of performing the duties thereof; and that by virtue of said appointment, the defendants claim to be in the lawful possession of said employment, and in rightful exercise of the powers and duties incident to the same, and that they refused and still do refuse to relinquish and surrender said employment to the relators. That said General Assembly convened on the 3d Monday in November, 1871, and adjourned on the — day of —, 1872.

On the above state of facts, after argument of counsel, and upon motion of the counsel for the relators, it was adjudged by the Court :

(1.) That the defendants are not entitled to hold and occupy said office, nor to exercise the powers, nor to perform the duties, nor to receive the emoluments thereof.

(2.) That the relators are entitled to hold and occupy such office, and to exercise the powers and perform the duties, and receive the emoluments thereof.

(3.) That the defendants be ousted from said office and the relators put in the same ; and that the defendants relinquish and surrender to the relators all books, money and property belonging to the same.

(4.) That the relators receive of the defendants their costs of suit.

From this judgment the defendants appealed.

*Battle & Son* and *Fowle,* for appellants.
*Batchelor, Edwards & Batchelor,* contra.

PEARSON, C. J. This case is governed by *Clark* v. *Stanley,* 66 N. C. Rep. 59. The Court, however, was willing to hear further argument and to review its decision, as the questions

are of the first impression and one of them, and that one which the greatest stress is now laid was not fully argued.

1. The question upon which that case turned was, what constitutes a public office? It was held that the duty of appointing proxies and directors on the part of the State, in all railroads in which the State has an interest, is a public office, and it is announced as a principle of law—an agency for the State is a public office; duration and salaries are not of the essence. The duty of acting for and in behalf of the State constitutes an office. According to this principle, the Trustees of the University, the directors of the Penitentiary, of the Lunatic Asylum and of the Institution for the Deaf and Dumb and the Blind are public officers. This is put beyond any room for doubt by the Constitution, Art. XIV, sec. 7, "No person shall hold more than one lucrative office under the State at the same time: *Provided,* That officers in the Militia, Justices of the Peace, *Commissioners of Public Charities,* and commissioners appointed for special purposes shall not be considered officers within the meaning of this section."

2. Have the defendants a right to the office of the directorship of the Penitentiary? This is to be decided upon in the first instance. C. C. P. sec. 370. The solution of the question involves the construction of Art. III, sec. 10. Has the General Assembly power to provide by law for the appointment or election by its own body of these officers, or is the appointing power vested in the Governor by and with the advice and consent of a majority of the Senators elect?

The stress of the argument was put on the position, that by its proper construction the Constitution only vests in the Governor, the power of appointing all officers whose appointments are not otherwise provided for by that instrument, or whose appointments shall not be otherwise provided for by law, and that in this instance the appointment of these officers has been otherwise provided for by law, to-

' wit : the statute under which they claim. In other words, that the General Assembly may from time to time provide for the appointment or election of officers by its own body, and 'thus take such appointments out of the operation of the general words of the Constitution.

It would be an anomaly, if the Constitution leaves it in the power of the General Assembly to assume to itself the duty of appointing or electing public officers, and thus open a door to defeat the express provisions of the instrument, and to encroach upon the functions assigned to a co-ordinate branch of the government.

This is the question now presented for our consideration. Creating an office is an act of legislation. Filling an office is an executive act. This is a fundamental principle. Accordingly, by the English constitution, the power of appointment is solely in the crown and the parliament has nothing to do with it. The constitution of the United States gives to the President the power of appointment subject to the confirmation of the Senate, but Congress as a body has nothing to do with it. The framers of our old constitution in 1776, had an extreme jealousy of the executive, and favored the legislative branch of the government. The colony was at war for its independence, and the governors had sided with the crown. This accounts for the fact that the power of appointment (except to fill vacancies until the meeting of the Legislature) is taken from the Governor and conferred upon the General Assembly. The election of the Governor, and of his council, and of his generals and field officers, is given to the General Assembly, as well as the election of the judges and other public officers and the appointment of Justices of the Peace.

But the Governor was Captain General of all of the military force of the State, and for fear, although stripped of the appointing power, and to be elected by the Legislature, the

Governor might endanger the liberties of the people, his eligibility to office is restricted to three years in six.

By amendments to the Constitution 1836, the distribution of powers is left as before, save that the election of the Governor is taken from the General Assembly and given to the people, and the term of office is fixed at two years.

By the present Constitution a very important change is made. The result of a recurrence to fundamental principles, *i. e.*, the election of the Governor, Judges and other chief public officers, is taken from the General Assembly and given to the people, and the residuary appointing power is vested in the Governor with the advice and consent of a majority of the Senators elect, and the General Assembly as a body have nothing to do with it.

This general view prepares the way for a particular consideration of the Constitution now before us for construction. Art. 3, sec. 10, "The Governor shall nominate, and by and with the advice and consent of a majority of the Senators elect, appoint all officers, whose offices are established by this Constitution, or which shall be created by law, and whose appointments are not otherwise provided by law, and no such officer shall be elected or appointed by the General Assembly." The Governor shall nominate, &c., "all officers whose appointments are not otherwise provided for." Here we have words in the present tense, and we have an instrument to construe by which provision is made for the election of the chief officers and for the appointment or election of many of the inferior officers. For instance, Trustees of the University to be appointed by the Board of Education; Sheriffs, Constables, &c., to be elected by the people, and Justices of the Peace by the people of the township; thus taking from the General Assembly the power exercised by that body of appointing Justices of the Peace, in fact taking from the General Assembly the power of electing or appointing any officer, except such as are strictly

.appurtenant—clerks, doorkeepers, &c., and confining the General Assembly to the duty of legislation by drawing a sharp line between legislative and executive acts, which was not attended to in the old Constitution, although in the Declaration of Rights it is set out as a fundamental principle: "The legislative, executive and judicial departments ought to be forever separate and distinct from each other."

The grammatical force of the words used in this section and the context of the whole instrument, force the conviction upon us, that the meaning and intent was to vest in the Governor the power to appoint all officers whose appointments are not otherwise provided for by that instrument, and we can see nothing to justify adding the words, " or whose appointments shall not be otherwise provided for by law" (that is, by the General Assembly). If, besides the grammatical construction of these words, and a general view of the context, by which our conclusion is arrived at, a critical view be taken of the whole section, it is seen that the draftsman, in reference to the establishment and creation of offices, had two ideas in his mind—one, of the present offices which are established by this Constitution, that is offices that are hereby made or are recognized as existing under the former government; the other, of the future offices which shall be created by law. But in reference to the appointment of officers, the draftsman had but one idea in his mind, to-wit: that of the present, which is expressed by the words, " whose appointments are not otherwise provided for," and the other idea, to-wit: that of the future, is excluded by the omission of the words, " or whose appointments shall not be otherwise provided for by law." Without these words, we can see no ground on which the position taken by the counsel of the defendants can be supported. In so grave an instrument, it cannot be supposed that words necessary to express the meaning were omitted by oversight. There is no rule of construction to justify the adding of these

words.  Indeed, the negative words show that these words were intentionally omitted, for this addition would include the power of the General Assembly to provide for the appointment of such officers, by its own action, and thus make an absurdity, or at all events invite an encroachment by the legislative upon the executive branch of the government.

The idea that the Constitution leaves it in the power of the legislative branch of the government to encroach upon the functions of the Governor, by providing from time to time other modes of appointment or election, and especially the mode of appointing or electing by the General Assembly itself, could only have suggested itself to a mind accustomed to look at the subject from the "standpoint" of the old Constitution, under which the General Assembly had the power of appointment as well as of legislation ; but such an idea cannot be entertained by a Court whose duty it is to look at the subject from the " standpoint" of the new Constitution, and to divest itself of the habits of thought and association belonging to the past.  It was said on the argument, "if the construction of the 10th section is taken to be, " whose appointments are not otherwise provided for by this Constitution," there will be nothing for it to operate on, because the Constitution provides for the election or appointment of all of the officers of the State.  Such is not the fact.  The appointment of the Trustees of the University is provided for, but the appointment of the directors of the other public institutions of the State, Art. III, sec. 7, is not otherwise provided for by the Constitution, nor is the appointment to the office of Keeper of the Capitol, all of which offices are established by the Constitution; nor is the appointment of such officers as should be deemed necessary to conduct the Penitentiary provided for, or the appointment of officers to fill any new office that " shall be created by law."

We have seen that the power to appoint all officers whose

appointments are not otherwise provided for by the Constitution, is vested in the Governor by express affirmative words.   But to make assurance doubly sure, there is also an express prohibition against the exercise of this power by the General Assembly, " and no such officer shall be appointed or elected by the General Assembly," that is no one to fill an office established by this Constitution or an office which shall be created by law.   Take it in any point of view, the appointment of the defendants by the General Assembly is not warranted by the Constitution, and they unlawfully hold and exercise the office of the Directors of the State's prison.

It was also said on the argument, the Constitution makes it the duty of the General Assembly to provide for the erection and conduct of a State's prison, Art. XI., sec. 3, and this includes the appointment of the directors.   *Non sequiter.*   Providing funds, making regulations and creating the necessary offices for the management of the institution, are acts of legislation ; but filling these offices by competent men, is a different matter—that is an executive function. The affirmative words of Art. III., sec. 10, by which the power of appointment is vested in the Governor, and also the negative words by which the General Assembly is prohibited from its exercise, shows the meaning of the Constitution to be a division of power in respect to the penitentiary, as in respect to the other public institutions and offices, so as to put the responsibility of creating the necessary offices upon one branch of the government, and the responsibility of properly filling such offices upon another.

By the Constitution " the sword " that is the physical power of the State and the power of appointment to office unless when other provision is made by the Constitution, is vested in the Governor.   " The purse " and the duty of making laws is vested in the General Assembly.   So the judiciary is given the power to decide all questions of law or equity, and to act as umpire and settle all questions of con-

stitutional right should there be an adverse claim under the authority of these branches of the government.

We declare our opinion to be that the defendants hold and exercise unlawfully the office of Directors of the State Prison. For the judgment and procedure proper to enforce it, I refer to the opinion in cases of *Johnson, McKee* and *McGowan.*

PER CURIAM. Judgment affirmed.