JOHN S. CUNNINGHAM et als. v. W. C. SPRINKLE et. als.

(Decided May 9, 1899).

*Board of Agriculture—Power of Appointment—Constitution, Art. III, Section 17—Act March 4, 1899.*

1. The Constitution, Art. III, Section 17, provides that the General Assembly shall establish a Department of Agriculture, Immigration and Statistics. This Section is not self executing, but is mandatory upon the Legislature.

2. Members of the Board of Agriculture are not constitutional officers, but being of legislative creation, are within the power of legislative appointment, and are not exclusively, nor of necessity, within the power of executive appointment.

3. The Act of March 4, 1899, which enlarges the number of the Board of Agriculture, naming the additional members, is not in conflict with the Constitution.

MANDAMUS, heard before *Brown, J.,* on 28th April, 1899, at Chambers, upon complaint and demurrer during April Term of the Superior Court of WAKE County.

Under the Act of March 4, 1899, the plaintiffs claim to be entitled to be added to, and to serve with, the members of the Board of Agriculture, and allege that they are excluded from the Board by the defendants and not allowed to participate in its proceedings, and they ask for a Order of Mandamus to compel the defendants to admit them.

The demurrer alleged that the Act of March 4, 1899, was unconstitutional on two grounds:

First, That the office of members of the Board of Agriculture is a constitutional office, and that the General Assembly has no power to elect to such office.

Second, That if it is an office created by the General Assembly, the power of appointment is an executive function, and that it cannot be exercised by the General Assembly.

His Honor overruled the demurrer, and rendered the judgment, stated in the opinion. Defendants excepted and appealed.

_Messrs. J. C. L. Harris & T. M. Argo,_ for defendants (appellant).
_Messrs. Simmons, Pou & Ward_ and _Battle & Mordecai,_ for plaintiffs.

DOUGLAS, J.  This is an action for a _mandamus,_ brought by the plaintiffs as members of the Board of Agriculture, elected under the Act of the General Assembly, ratified March 4, 1899, to require the defendants, members of said Board of Agriculture by appointment of the Governor under the Act of 1897, Chapter 85, to admit the plaintiffs to all the rights of members of said Board along with the defendants, as prayed for in the complaint.

The answer of the defendants admits all the material allegations of fact in the complaint, and denies only the conclusions of law, and therefore, in effect, it is but a _demurrer._

The plaintiffs, in accordance with the Act of March 4, 1899, met with the defendants, and the plaintiff John S. Cunningham was elected chairman of the Board, and routine business was transacted, without any question being made as to the rights of the plaintiffs as members. An adjournment of that meeting was had to April 26, 1899, at 4:30 p. m., at which time the plaintiffs (with one or two exceptions) presented themselves at the place of meeting, and the defendants refused admission of the plaintiffs to the rooms of the Board, and denied the validity of their election as members, and refused to admit them as membesr.

The only question in this action is, whether the plaintiffs were legally elected members of the Board—the Act of March

4, 1899, under which they were elected, being alleged by the defendants to be unconstitutional, upon the following grounds:

1. They allege that the office of member of the Board of Agriculture is a constitutional office, and that the General Assembly has no power to elect to such offices.

2. That if it is an office created by the General Assembly the power of appointment is an *executive* function and that it can not be exercised by the General Assembly.

The following judgment was rendered by the Court below:

This cause coming on to be heard before *George H. Brown, Jr.,* Judge of Superior Court, at Chambers, in the Court House at Raleigh, North Carolina, on the 28th day of April, 1899, by consent of both plaintiffs and defendants; and the said cause being heard upon the pleadings, no issue of fact being raised thereby; and the Court being of opinion upon the facts stated in the complaint and admitted by the answer that the plaintiffs and each and every one of them are members of the Board of Agriculture, duly elected and qualified—

Hereupon it is considered ordered and adjudged as follows:

1. That the plaintiffs and each and every one of them are duly elected and qualified members of the Board of Agriculture, and entitled by virtue of their election and qualification to all the powers and emoluments pertaining to the office of member of the Board of Agriculture, and to participate with the defendants in the exercise of the duties and powers and functions imposed upon and vested in the Board of Agriculture.

2. That a writ issue for the Superior Court of Wake County to be directed to the defendants in this action, and each and every of them, commanding them to permit the plaintiffs in this action, and each and every of them, to have possession jointly with said defendants, of and access to the

apartments, books, records, documents and effects belonging or pertaining to the Department of Agriculture and the Board of Agriculture; and also to admit the said plaintiffs, and each and every of them, to participation in the affairs, duties and powers pertaining to said Board of Agriculture.

3. That the plaintiffs recover of the defendants their costs in this action expended.

The defendants appealed.

The points in this case, however important, are comparatively simple and clearly presented. There is no effort to remove the 'defendants from office, or to deprive them of any rights of property therein. It is true that their influence may be materially diminished by so large an addition to the membership of the Board, as one vote in nine is worth more than one in twenty-four; but they still have the right to cast their votes when and how they please. So there appears to be no abstraction of property rights. The question is purely upon the rights of the plaintiffs to act as members of the Board. After the elaborate opinions of the Court, as well as those concurring and dissenting, filed at this Term upon questions of title to office, but little is now left to be said. Upon the authority of the cases of *State Prison v. Day* and *Cherry v. Burns,* both filed at this term, together with the cases therein cited, we feel compelled to say that members of the Board of Agriculture are not constitutional officers; and that being of legislative creation, they are equally within the power of legislative appointment. It is true that Article III, Section 17, of the Constitution, as amended by the Convention of 1875, provides that: "The General Assembly shall establish a Department of Agriculture, Immigration and Statistics, under such regulations as may best promote the agricultural interests of the State, and shall enact laws for the adequate protection and encouragement of sheep industry." This sec-

tion does not profess to establish any such department, but simply *directs* the Legislature to do so, leaving to it the largest latitude of regulation. Admitting that this Section is mandatory, it is not self-executing; as further action, and intelligent action, would be necessary on the part of the Legislature to bring the new department even into existence, much more to give it form and action. While the imperative duty and unquestioned power rest with us to declare null and void any Act of the Legislature that may be in violation of the Constitution, we must concede to that coordinate branch of Government absolute freedom of discretion in the lawful exercise of its constitutional prerogatives.

The second objection is well answered in *Trustees of University v. McIver,* 72 N. C., 76, 85, where this Court says: "But it is again objected that in electing the Trustees the Legislature usurped an executive power, which is forbidden by the theory, if not the words of the Constitution. ' Now the election of officers is not an executive, legislative or judicial power, but only a mode of filling the offices created by law, whether they belong to one department or the other. The election of a Judge is not a judicial power, nor the election of a Governor an executive power; for if so, all elections by the people would be an infringement upon the executive department. The true test is, where does the Constitution lodge the power of electing the various public agents of the Government; and it is conclusive upon the judicial mind, whether this power is found to be lodged in the one or the other branch, or concurrently in all these departments into which the supreme authority of the State is divided."

This view of that learned Court was strictly in accordance with the constitutional history of this State. The Constitution of 1176 in Section 4, of the Declaration of Rights, declared that: "The legislative, executive and supreme judi-

cial powers of government ought to be forever separate and distinct from each other." Yet Articles XIII, XIV and XV provided that the Legislature should, by joint ballot, *elect* the Governor, and *appoint* Judges of the Supreme Courts of Law and Equity, Judges of Admiralty, Attorney General, Generals and field officers in the militia, and all officers of the regular army of this State. The Governor continued to be elected by the Legislature until the Convention of 1835, and the Judges until the Constitution of 1868. It is thus clear that the power of appointment was not regarded as exclusively an executive prerogative. The judgment of the Court below is therefore affirmed.