MARTIN, Chief Justice.
Our founders believed that separating the legislative, executive, and judicial powers of state government was necessary for the preservation of liberty. The Constitution of North Carolina therefore vests each of these powers in a different branch of government and declares that “[t] he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.” N.C. Const, art. I, § 6.
Each branch of government has a distinctive purpose. The General Assembly, which comprises the legislative branch, enacts laws that “protect or promote the health, morals, order, safety, and general welfare of society.” State v. Ballance, 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949); see also N.C. Const, art. II, §§ 1, 20. The executive branch, which the Governor leads, faithfully executes, or gives effect to, these laws. See N.C. Const. art. Ill, §§ 1, 5(4). The judicial branch interprets the laws and, through its power of judicial review, determines whether they comply with the constitution. See id. art. IV, § 1; Bayard v. Singleton, 1 N.C. 5, 6-7 (1787).
The constitution also incorporates a system of checks and balances that gives each branch some control over the others. For example, the Lieutenant Governor is the President of the Senate and casts tie-breaking votes when the Senate is equally divided. N.C. Const, art. Ill, § 6. *636 At the same time, the General Assembly can assign duties to the Lieutenant Governor. Id. Still, the separation of powers clause requires that, as the three branches of government carry out their duties, one branch will not prevent another branch from performing its core functions. See Hart v. State, 368 N.C. 122, 126-27, 774 S.E.2d 281, 285 (2015).
In this case, plaintiffs challenge legislation that authorizes the General Assembly to appoint a majority of the voting members of three administrative commissions. Plaintiffs contend that, by giving itself the power to appoint commission members, the General Assembly has usurped Governor McCrory’s constitutional appointment power and interfered with his ability to take care that the laws are faithfully executed. Plaintiffs’ contentions raise two important questions about the function and structure of state government: (1) Does the appointments clause in Article III, Section 5(8) of the state constitution prohibit the General Assembly from appointing statutory officers to administrative commissions? (2) If not, do the specific appointment provisions challenged in this case violate the separation of powers clause in Article I, Section 6?
We hold that, while the appointments clause itself places no restrictions on the General Assembly’s ability to appoint statutory officers, the challenged provisions violate the separation of powers clause. In short, the legislative branch has exerted too much control over commissions that have final executive authority. By doing so, it has prevented the Governor from performing his express constitutional duty to take care that the laws are faithfully executed.
I
The Energy Modernization Act and the Coal Ash Management Act of 2014 create three administrative commissions that are housed in the executive branch of government: the Oil and Gas Commission, the Mining Commission, and the Coal Ash Management Commission. See generally N.C.G.S. §§ 143B-290 to -293.6 (2014) (effective July 31, 2015); id. §§ 130A-309.200 to -309.231 (2014). The Acts also specify how commission members will be appointed and how they may be removed. See generally id.
The Oil and Gas Commission is housed in the Department of Environment and Natural Resources (DENR)[1] and has the power to *637 promulgate rules, make determinations, and issue orders consistent with the Oil and Gas Conservation Act. N.C.G.S. § 143B-293.1. The commission has nine members: three appointed by the Governor and six appointed by the General Assembly. Id. § 143B-293.2(al). Each member serves a three-year term. Id. § 143B-293.2(b). A majority of the members constitutes a quorum for the transaction of business. Id. § 143B-293.2(e). The commission elects one of its members to serve as chair. Id. § 143B-293.4. The chair appoints members of the commission to a Committee on Civil Penalty Remissions, which has the power to remit civil environmental penalties that DENR imposes. Id. § 143B-293.6(b), (c). The Governor may remove any member of the commission for misfeasance, malfeasance, or nonfeasance. Id. § 143B-293.2(c)(l).
Like the Oil and Gas Commission, the Mining Commission is housed in DENR. Id. § 143B-290. The Mining Commission has the power to promulgate mining rules and affirm, modify, or overrule permit decisions that DENR makes. Id. § 143B-290(l)(c)-(e). This commission has eight members: two appointed by the Governor; four appointed by the General Assembly; the chair of the North Carolina State University Minerals Research Laboratory Advisory Committee; and the State Geologist, who is ex officio and nonvoting. Id. § 143B-291(al). Each member serves a six-year term. Id. § 143B-291(b). As with the Oil and Gas Commission, a majority of the Mining Commission’s members constitutes a quorum for the transaction of business, and the Governor may remove any member for misfeasance, malfeasance, or nonfeasance. Id. § 143B-291(d), (f).
The Coal Ash Management Commission is administratively located in the Division of Emergency Management of the Department of Public Safety but is expressly required to exercise its powers and duties “independently,” without “the supervision, direction, or control of the Division or Department.” Id. § 130A-309.202(n). This commission has the power to review and approve coal ash surface impoundment classifications and closure plans that DENR proposes. Id. § 130A-309.202(f); see also id. §§ 130A-290(a)(4a), -309.213, -309.214. The commission has nine members: three appointed by the Governor and six appointed by the General Assembly. Id § 130A-309.202(b). Each member serves a six-year term. Id. § 130A-309.202(o). Five members constitute a quorum for the transaction of business. Id. § 130A-309.202(h). The Governor appoints the chair of the Coal Ash Management Commission from among the *638 nine members, and that member serves as chair at the pleasure of the Governor. Id. § 130A-309.202(c). As with the other two commissions, the Governor may remove any member of the Coal Ash Management Commission for misfeasance, malfeasance, or nonfeasance. Id. § 130A-309.202(e).
On 13 November 2014, plaintiffs filed a complaint in Superior Court, Wake County, that challenged the constitutionality of certain provisions in the Acts. Plaintiffs argued that the provisions authorizing the General Assembly to appoint members to the commissions — specifically, N.C.G.S. §§ 130A-309.202(b), 143B-291(al), and 143B-293.2(al) — violate the appointments clause in Article III, Section 5(8) and the separation of powers clause in Article I, Section 6. Plaintiffs also argued that the provision requiring the Coal Ash Management Commission to exercise its powers and duties independently of the Division of Emergency Management and the Department of Public Safety, see N.C.G.S. § 130A-309.202(n), violates Article I, Section 6 and Article III, Sections 1 and 5(4). Plaintiffs sought a declaration that the challenged provisions are unconstitutional.[2] In addition, because the General Assembly had already made appointments to the Coal Ash Management Commission, plaintiffs requested that those appointees be removed.
On 16 March 2015, a three-judge panel of the superior court determined that the challenged appointment provisions did not violate the appointments clause but did violate the separation of powers clause. The panel also determined that the Coal Ash Management Commission’s independent status violated the separation of powers clause. Finally, the panel dismissed without prejudice plaintiffs’ action to remove Coal Ash Management Commission appointees. Defendants appealed directly to this Court pursuant to N.C.G.S. § 7A-27(al) (2014).
II
This Court construes and applies the provisions of the Constitution of North Carolina with finality. Hart, 368 N.C. at 130, 774 S.E.2d at 287; State ex rel. Martin v. Preston, 325 N.C. 438, 449, 385 S.E.2d 473, 479 *639 (1989). We review constitutional questions de novo. Piedmont Triad Reg’l Water Auth. v. Sumner Hills, Inc., 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001). In exercising de novo review, we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond reasonable doubt. Hart, 368 N.C. at 131, 774 S.E.2d at 287-88; Baker v. Martin, 330 N.C. 331, 334-35, 410 S.E.2d 887, 889 (1991). In other words, the constitutional violation must be plain and clear. Preston, 325 N.C. at 449, 385 S.E.2d at 478. To determine whether the violation is plain and clear, we look to the text of the constitution, the historical context in which the people of North Carolina adopted the applicable constitutional provision, and our precedents. See id. at 449, 385 S.E.2d at 479 (“In interpreting our Constitution — as in interpreting a statute — where the meaning is clear from the words used, we will not search for a meaning elsewhere.”); Sneed v. Greensboro City Bd. of Educ., 299 N.C. 609, 613, 264 S.E.2d 106, 110 (1980) (“Inquiry must be had into the history of the questioned provision and its antecedents, the conditions that existed prior to its enactment, and the purposes sought to be accomplished by its promulgation.”); Elliott v. State Bd. of Equalization, 203 N.C. 749, 753, 166 S.E. 918, 921 (1932) (“Likewise, we may have recourse to former decisions, among which are several dealing with the subject under consideration.”). With these principles in mind, we now examine the two questions raised by defendants’ appeal.
A
We first address whether the appointments clause in Article in, Section 5(8) prohibits the General Assembly from appointing statutory officers. This clause states: “The Governor shall nominate and by and with the advice and consent of a majority of the Senators appoint all officers whose appointments are not otherwise provided for.” N.C. Const. art. Ill, § 5(8). Plaintiffs contend that the clause gives the Governor broad power to appoint both constitutional and statutory officers. In defendants’ view, the appointments clause implicitly gives the appointment power to the General Assembly. They cite the maxim that all power not expressly limited by the people in the constitution remains with the people and “is exercised through the General Assembly, which functions as the arm of the electorate.” Pope v. Easley, 354 N.C. 544, 546, 556 S.E.2d 265, 267 (2001) (per curiam). Based on our review of the text of the appointments clause, its historical development, and our precedents interpreting it, we conclude that this clause gives the Governor the exclusive authority to appoint constitutional officers whose appointments are not otherwise provided for by the constitution. *640 The appointments clause does hot prohibit the General Assembly from appointing statutory officers to administrative commissions.[3]
The Constitution of 1776 did not have an analogue to the appointments clause. That constitution had specific provisions that expressly authorized the General Assembly to appoint certain officers. These officers included the Governor, N.C. Const, of 1776, § 15; all seven members of the Council of State, id. § 16; and the judges of the Supreme Courts of Law and Equity, id. § 13. As a result, the General Assembly was the general appointing authority under our state’s first constitution. People ex rel. Nichols v. McKee, 68 N.C. 429, 431-32 (1873).
In 1835, the people ratified a constitutional amendment that gave them the power to directly elect the Governor. N.C. Const, of 1776, Amends, of 1835, art. II, § 1. When they ratified the Constitution of 1868, they then shifted appointment power from the General Assembly to the Governor. McKee, 68 N.C. at 433. The Constitution of 1868 removed all of the provisions that had authorized the General Assembly to appoint executive and judicial officers.[4] Instead, it introduced the appointments clause, which stated:
The Governor shall nominate, and, by and with the advice and consent of a majority of the Senators elect, appoint, all officers whose offices are established by this Constitution, or which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly.
N.C. Const, of 1868, art. Ill, § 10.
*641 Shortly after the Constitution of 1868 was ratified, this Court stated that the phrase “whose appointments are not otherwise provided for” referred to those appointments not otherwise provided for by the constitution itself. People ex rel. Welker v. Bledsoe, 68 N.C. 457, 462-64 (1873); State ex rel. Clark v. Stanley, 66 N.C. 59, 63 (1872). By 1875, it was “settled that the words ‘otherwise provided for’ mean[t] otherwise provided for by the Constitution.” People ex rel. Cloud v. Wilson, 72 N.C. 155, 158 (1875) (citing Clark and Welker); accord Trs. of Univ. of N.C. v. McIver, 72 N.C. 76, 83 (1875). This Court also observed that the Constitution of 1868 had “superadded” the phrase “and no such officer shall be appointed or elected by the General Assembly” to ensure that the General Assembly could not appoint constitutional or statutory officers, except where the constitution expressly provided for it. Clark, 66 N.C. at 63; see also Welker, 68 N.C. at 463-64; McKee, 68 N.C. at 432-34. Under the original version of the appointments clause, then, the Governor had the exclusive power to appoint all constitutional and statutory officers unless the constitution itself provided otherwise. See also State ex rel. Salisbury v. Croom, 167 N.C. 223, 226, 83 S.E. 354, 354-55 (1914); State Prison v. Day, 124 N.C. 362, 366 67, 32 S.E. 748, 749 (1899).
This expansive shift in the appointment power was “not... satisfactory to the dominant sentiment in the State,” Salisbury, 167 N.C. at 226, 83 S.E. at 355, and was short-lived. In 1876, the people ratified a set of thirty constitutional amendments. John L. Sanders, Our Constitutions: A Historical Perspective, in Elaine F. Marshall, N.C. Dep’t of Sec’y of State, North Carolina Manual 2011-2012 73, 76, https://www.secretary. state.nc.us/Publications/manual.aspx. These amendments restored much of the power that the General Assembly had lost in the Constitution of 1868. Id. at 77. One amendment modified the appointments clause, which now stated:
The Governor shall nominate, and by and with the advice and consent of a majority of the Senators elect, appoint all officers, whose offices are established by this Constitution, and whose appointments are not otherwise provided for.
N.C. Const, of 1868, art. Ill, § 10 (1876). We have indicated that the people purposefully deleted the phrases “or which shall be created by law” and “and no such officer shall be appointed or elected by the General Assembly” to restore the General Assembly’s ability to appoint statutory officers. See State ex rel. Cherry v. Burns, 124 N.C. 761, 765, 33 S.E. 136, 137 (1899). In other words, the amended clause no longer gave the Governor the constitutional power to appoint statutory officers. Id.; see also Salisbury, 167 N.C. at 226, 83 S.E. at 355 (“It will thus be *642 noted that the inhibition on the legislative power to appoint to office is removed and the inherent power of the Governor to appoint is restricted to constitutional offices and where the Constitution itself so provides.”). But the amendment did not change the language of the phrase “whose appointments axe not otherwise provided for,” even though it was ratified in the wake of this Court’s authoritative and then-recent pronouncements about that phrase’s meaning. See Welker, 68 N.C. at 462-64; Clark, 66 N.C. at 63. That phrase continued to mean “provided [for] by the constitution.” Cherry, 124 N.C. at 764, 33 S.E. at 137.
In sum, this amendment to the appointments clause authorized the Governor to appoint only constitutional officers whose appointments were not otherwise provided for by the constitution. Because the scope of the appointments clause after 1876 no longer encompassed statutory officers, the clause did not prohibit the General Assembly from appointing them. Salisbury, 167 N.C. at 226, 83 S.E. at 355; Cherry, 124 N.C. at 765, 33 S.E. at 137; Cunningham v. Sprinkle, 124 N.C. 638, 641, 33 S.E. 138, 138-39 (1899); Day, 124 N.C. at 366-67, 32 S.E. at 749; State ex rel. Ewart v. Jones, 116 N.C. 570, 571-74, 21 S.E. 787, 787-88 (1895).
The appointments clause did not change again until the people adopted the current version of the clause in the Constitution of 1971. The current appointments clause states:
Appointments. The Governor shall nominate and by and with the advice and consent of a majority of the Senators appoint all officers whose appointments are not otherwise provided for.
N.C. Const, art. Ill, § 5(8). When the people enacted the current version of the clause, they deleted the phrase “whose offices are established by this Constitution.” But, as in 1876, they did not disturb the phrase “whose appointments are not otherwise provided for.” Compare N.C. Const. of 1868, art. Ill, § 10 (1876), with N.C. Const. art. III, § 5(8).
We conclude that the latter phrase still means “whose appointments are not otherwise provided for by the Constitution.” Welker, 68 N.C. at 463 (emphasis added). To conclude otherwise would imply that the drafters of the Constitution of 1971 intended to change the meaning of this phrase while using the same words. That inference would not be justified, especially since this Court had already given the phrase a settled construction before 1971.
We also conclude that the omission of the phrase “whose offices are established by this Constitution” in the current version of the *643 appointments clause does not affect the clause’s meaning. At first glance, this omission seems to restore the Governor’s exclusive power to appoint statutory officers, whose offices axe not established by the constitution. But the text of the current clause, as a whole, is unclear. Just as the phrase “whose appointments are not otherwise provided for” refers only to those appointments not otherwise provided for in the constitution itself, the phrase “all officers” might refer only to constitutional officers. The report of the North Carolina State Constitution Study Commission that drafted and proposed the Constitution of 1971 resolves this ambiguity. Cf. Sneed, 299 N.C. at 615-16, 264 S.E.2d at 112 (relying on this report to discern the meaning of another provision in the current constitution). That report shows that the current appointments clause does not enlarge the Governor’s appointment power.
According to the report, the Study Commission did not intend for the proposed constitution’s revisions “to bring about any fundamental change in the power of state and local government or the distribution of that power.” Report of the North Carolina State Constitution Study Commission 4 (1968). The report explains that the proposed constitution contained “editorial pruning, rearranging, rephrasing, and modest amendments,” but that the Study Commission had reserved its “more substantial changes” for a separate set of amendments that it was proposing along with the proposed constitution. Id. at 29. And the report notes that “ [abbreviation of the constitution for brevity’s sake . . . has been an incident of [the Study Commission’s] work, since the great majority of the changes embraced in the proposed constitution take the form of deletions of or contractions in language.” Id.
The report then addresses the proposed changes to Article III specifically. It states that, although the Study Commission “reorganized and abbreviated” Article m “by the omission of repetitive, legislative-type, and executed provisions,” the proposed constitution “contains few substantive changes of note” to that Article. Id. at 31. The report goes on to discuss these few substantive changes but does not mention the appointments clause or anything about the appointment power. See id.
The report also states that the Study Commission was “recommending several changes that affect the executive branch of state government and especially the Governor,” but that “these [changes] are of sufficient moment that they take the form of separate amendments.” Id. And the Study Commission did propose a separate amendment that would have made significant substantive changes to the appointments clause. See id. at 47. The amendment would have given the Governor the power to *644 “appoint and... remove the heads of all administrative departments and agencies of the State,” and would have stated that “[a]ll other officers in the administrative service of the State shall be appointed and may be removed as provided by law.” Id. (quoting the Study Commission’s proposed Amendment No. 5). Unlike the “general editorial revision” that the adopted language embodied, this amendment entailed “a substantive constitutional change of such importance that... the voters should have a chance to act upon it independently.” Id. at 4. The House Committee on Constitutional Amendments gave the amendment an unfavorable report, however, and the General Assembly did not submit it to the people for ratification. See N.C. House Journal, Reg. Sess. 1969, at 518, 520 (recording the introduction of the proposed amendment in H.B. 880); id. at 755, 757 (recording the unfavorable committee report on H.B. 880; no further action noted).
Given how careful the Study Commission was to identify any substantive changes in the proposed constitution — and given that the Study Commission proposed major substantive changes by separate amendments — it would be unreasonable to say that deleting the phrase “whose offices are established by this Constitution” dramatically changed the appointments clause’s meaning. The Governor’s power to appoint officers under the clause thus continues to extend only to constitutional officers.
As a result, the appointments clause means the same thing now that it did in 1876. It authorizes the Governor to appoint all constitutional officers whose appointments are not otherwise provided for by the constitution. It follows that the appointments clause does not prohibit the General Assembly from appointing statutory officers to administrative commissions.
We now turn to plaintiffs’ separation of powers challenge.
B
Plaintiffs argue that the challenged provisions violate the separation of powers clause in Article I, Section 6 by preventing the Governor from performing his constitutional duty under Article III, Section 5(4). To address an Article I, Section 6 challenge, we necessarily examine the text of the constitution, our constitutional history, and this Court’s separation of powers precedents.
The separation of powers clause declares that “[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.” N.C. Const, art. I, *645 § 6. This principle is fundamental to our form of government and has appeared in each of our state’s constitutions. See id.-, N.C. Const, of 1868, art. I, § 8; N.C. Const. of 1776, Declaration of Rights § IV; see also State ex rel. Wallace v. Bone, 304 N.C. 591, 595-601, 596 n.2, 286 S.E.2d 79, 81-84, 82 n.2 (1982).
Although the text of the separation of powers clause has changed very little since 1776, the powers that the current constitution allocates to the legislative and executive branches have changed significantly. In particular, the General Assembly lost the power to appoint the Governor in 1835, see N.C. Const, of 1776, Amends, of 1835, art. II, § 1; lost the power to appoint the Council of State in 1868, see N.C. Const, of 1868, art. Ill, §§ 1, 14; and has never regained the full scope of appointment power that it had in 1776. And unlike the Constitution of 1776, our subsequent state constitutions have given the Governor the duty to take care that the laws are faithfully executed. See N.C. Const, art. Ill, § 5(4); N.C. Const, of 1868, art. Ill, § 7. Because the “powers” that must be kept “forever separate and distinct from each other,” N.C. Const, art. I, § 6, are different in the current constitution than they were in the original constitution, the separation of powers clause applies differently as well.
The clearest violation of the separation of powers clause occurs when one branch exercises power that the constitution vests exclusively in another branch. See Houston v. Bogle, 32 N.C. 496, 503-04 (1849). Other violations are more nuanced, such as when the actions of one branch prevent another branch from performing its constitutional duties. See Bacon v. Lee, 353 N.C. 696, 715, 549 S.E.2d 840, 853, cert. denied, 533 U.S. 975 (2001). When we assess a separation of powers challenge that implicates the Governor’s constitutional authority, we must determine whether the actions of a coordinate branch “unreasonably disrupt a core power of the executive.” Id. at 717, 549 S.E.2d at 854; see also In re Alamance Cty. Ct. Facils., 329 N.C. 84, 100-01, 405 S.E.2d 125, 133 (1991) (stating that one branch “must minimize the encroachment” on another branch “in appearance and in fact”). As part of the inquiry in this case, we must also consider whether the General Assembly has “retain[ed] some control” over the executive branch’s functions. Wallace, 304 N.C. at 608, 286 S.E.2d at 88.
In the current constitution, Article III, Section 5(4) gives the Governor the duty to “take care that the laws be faithfully executed.” The challenged legislation implicates this constitutional duty because, as the three-judge panel correctly observed, all three commissions “are primarily administrative or executive in character,” and because they have final authority over executive branch decisions. See N.C.G.S. *646 § 130A-309.202(f) (authorizing the Coal Ash Management Commission to overrule DENR classifications and closure plans for coal ash surface impoundments); id. § 143B-290 (authorizing the Mining Commission to overrule certain permit decisions that DENR makes); id. § 143B-293.6(b) (authorizing a committee within the Oil and Gas Commission to remit civil environmental penalties that DENR imposes). In fight of the final executive authority that these three commissions possess, the Governor must have enough control over them to perform his constitutional duty.[5]
The degree of control that the Governor has over the three commissions depends on his ability to appoint the commissioners, to supervise their day-to-day activities, and to remove them from office. The legislation that plaintiffs challenge here limits each of these methods of control. It gives the General Assembly the power to appoint a majority of each commission’s voting members and gives the Governor only two or three appointees per commission. See id. § 130A-309.202(b); id. §§ 143B 291(al), -293.2(al). It also gives each commission final executive authority over certain DENR decisions, sapping the power of a principal administrative department over which the Governor has greater control. See id. § 130A-309.202(f); id. §§ 143B-290(l)(c), -293.6; see also id. §§ 143B-9, -6(6). It insulates the Coal Ash Management Commission from executive branch control even more by requiring the commission to exercise its powers and duties “independently,” without the “supervision, direction, or control” of the Division of Emergency Management or the Department of Public Safety. Id. § 130A-309.202(n). And the challenged legislation sharply constrains the Governor’s power to remove members of any of the three commissions, allowing him to do so only for cause. Id. § 130A-309.202(e); id. §§ 143B 291(d), -293.2(c)(1).
We cannot adopt a categorical rule that would resolve every separation of powers challenge to the legislative appointment of executive officers. Because each statutory scheme will vary the degree of control that legislative appointment provisions confer on the General Assembly, we must resolve each challenge by carefully examining its specific factual *647 and legal context. While the General Assembly’s ability to appoint an officer obviously does not give it the power to control what that officer does, we must examine the degree of control that the challenged legislation allows the General Assembly to exert over the execution of the laws.
Using that approach here, we hold that the challenged appointment provisions violate the separation of powers clause. When the General Assembly appoints executive officers that the Governor has little power to remove, it can appoint them essentially without the Governor’s influence. That leaves the Governor with little control over the views and priorities of the officers that the General Assembly appoints. When those officers form a majority on a commission that has the final say on how to execute the laws, the General Assembly, not the Governor, can exert most of the control over the executive policy that is implemented in any area of the law that the commission regulates. As a result, the Governor cannot take care that the laws are faithfully executed in that area. The separation of powers clause plainly and clearly does not allow the General Assembly to take this much control over the execution of the laws from the Governor and lodge it with itself. See Bacon, 353 N.C. at 717-18, 549 S.E.2d at 854; Wallace, 304 N.C. at 608, 286 S.E.2d at 88; see also N.C. Const. art. III, § 5(4).[6]
Under the rule that defendants advance, the General Assembly could appoint every statutory officer to every administrative body, even those with final executive authority, and could prohibit the Governor from having any power to remove those officers. This rule would nullify the separation of powers clause, at least as it pertained to the General Assembly’s ability to control the executive branch.
Our appointment cases do not embrace defendants’ proposed rule. Many do not even involve separation of powers challenges. See, e.g., Salisbury, 167 N.C. at 227, 83 S.E. at 355 (inteipreting two statutes to *648 determine that the Governor’s recess appointment without Senate confirmation was valid only until the Senate reconvened and confirmed a new appointee); Cherry, 124 N.C. at 764-65, 33 S.E. at 137 (concluding that the “keeper of the capitol” was outside the scope of the appointments clause because it was not a constitutional office); Ewart, 116 N.C. at 573-74, 21 S.E. at 788 (determining that the General Assembly’s creation of a new office did not create a “vacancy” in that office).
Those appointment cases that do involve separation of powers challenges do not establish the proposed rule either. State ex rel. Martin v. Melott does not supply a majority rationale that supports its judgment, so it does not establish any separation of powers rule at all. Compare 320 N.C. 518, 523-24, 359 S.E.2d 783, 786-87 (1987) (plurality opinion), with id. at 525-28, 359 S.E.2d at 788-89 (Meyer, J., concurring). In Trustees of the University of North Carolina v. McIver, where there was a clear majority, this Court held that the General Assembly could elect trustees of the University of North Carolina. 72 N.C. at 87. There, a constitutional amendment separate from the appointments clause gave the General Assembly the “unlimited power” to determine who would elect the trustees. Id. at 83-85. The Court concluded that this absolute discretion necessarily gave the General Assembly the power to elect them itself. See id. at 81-87. But that holding has no effect on this case because the constitutional provision in question — which pertained only to the University of North Carolina and its trustees — does not apply here. In Cunningham v. Sprinkle, a constitutional amendment that directed the General Assembly to establish the Department of Agriculture likewise gave the General Assembly “the largest latitude of regulation” in establishing that department. 124 N.C. at 641-42, 33 S.E. at 139. The provision in Cunningham also does not apply here.
Notably, Cunningham and McIver both conclude that appointing statutory officers is not an exclusively executive prerogative. See Cunningham, 124 N.C. at 643, 33 S.E. at 139; McIver, 72 N.C. at 85. We agree, and do not deny that the General Assembly may generally appoint statutory officers to administrative commissions.[7] We merely deny that it may appoint them in every instance and under all circumstances.
*649 III
“A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty,” N.C. Const, art. I, § 35, and “the principle of separation of powers is a cornerstone of our state and federal governments,” Wallace, 304 N.C. at 601, 286 S.E.2d at 84. The appointments clause does not prohibit the General Assembly from appointing statutory officers, and the General Assembly can appoint them in many instances. But the challenged appointment provisions, in their statutory context, prevent the Governor from performing his constitutional duty to take care that the laws are faithfully executed. By doing so, these provisions violate the separation of powers clause.
We therefore modify and affirm the decision of the three-judge superior court panel in part and vacate it in part.
MODIFIED AND AFFIRMED IN PART; VACATED IN PART.

. The Department of Environment and Natural Resources is now called the Department of Environmental Quality. Current Operations and Capital Improvements Appropriations Act of 2015, ch. 241, sec. 14.30(c), 2015-5 N.C. Adv. Legis. Serv. 38, 322 *637 (LexisNexis). Because the Energy Modernization Act and the Coal Ash Management Act predate this name change and refer to the department as the Department of Environment and Natural Resources, we will continue to use this superseded name.

. Plaintiffs also sought a declaration that a provision of the Coal Ash Management Act requiring the Governor to issue an executive order, see N.C.G.S. § 130A-309.202Q) (2014) (repealed 2016), was unconstitutional. The three-judge panel granted declaratory relief to plaintiffs on this issue, and the General Assembly subsequently repealed the provision. Act of Apr. 16, 2015, ch. 9, sec. 1.1, 2015-1 N.C. Adv. Legis. Serv. 63, 65 (LexisNexis). Defendants did not appeal this issue and, in any event, it is moot.

. Our interpretation of the appointments clause in the state constitution differs from the United States Supreme Court’s interpretation of the federal constitution’s appointments clause. Under the latter clause, “[principal officers are selected by the President with the advice and consent of the Senate,” and Congress may allow “[i]nferior officers... to be appointed by the President alone, by the heads of departments, or by the Judiciary.” Buckley v. Valeo, 424 U.S. 1, 132 (1976) (per curiam); see U.S. Const, art. II, § 2, cl. 2. The text and drafting history of the federal clause indicate that the framers of the United States Constitution deliberately denied Congress “any authority itself to appoint those who were ‘Officers of the United States.’ ” Buckley, 424 U.S. at 129. Congress therefore may not vest the appointment of any officers of the United States with itself or its own officers. Id. at 127. North Carolina’s appointments clause, however, differs in both text and history.

. The Constitution of 1868 did give the General Assembly the power to appoint members of the Board of Public Charities. See N.C. Const, of 1868, art. XI, § 7.

. Our opinion takes no position on how the separation of powers clause applies to those executive departments that are headed by the independently elected members of the Council of State. See N.C. Const, art. HI, § 7 (providing for the election of the Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, Attorney General, Commissioner of Labor, Commissioner of Agriculture, and Commissioner of Insurance). The facts of this case concern DENR, which unquestionably falls under the Governor’s purview. See N.C.G.S. § 143B-6(6) (2013) (identifying DENR as aprincipal department); id. § 143B-9 (2013) (“The head of each principal State department, except those departments headed by popularly elected officers, shall be appointed by the Governor and serve at his pleasure.”).

. Because we hold that the challenged appointment provisions violate the separation of powers clause, we can no longer address plaintiffs’ separate claim that the Coal Ash Management Commission’s statutory mandate to act “independently” of the Division of Emergency Management and the Department of Public Safety violates that clause as well. The facts that existed when plaintiffs brought their claim — namely, that the Coal Ash Management Commission has final executive authority, that the Governor has limited removal power, and that the General Assembly appoints a majority of its voting members — no longer exist now that the challenged appointment provisions have been invalidated. As a result, plaintiffs’ claim under the current statutory scheme is moot. We therefore vacate the portion of the three-judge panel’s decision that held N.C.G.S. § 130A-309.202(n) unconstitutional.

. As a corollary, the General Assembly may have broader latitude than it does here when it appoints members to commissions whose functions are different from those of the commissions in the present case, such as the Rules Review Commission. See N.C.G.S. § 143B-30.1; id. §§ 150B-2(ld), -21.1 to -21.14 (2013).