Chief Justice MARTIN dissenting.
The majority opinion imposes a constitutional requirement that the Governor be able to appoint a majority of the members of the Bipartisan State Board of Elections and Ethics Enforcement from his own political party. In so doing, the majority deviates from our holding in State ex rel. McCrory v. Berger , 368 N.C. 633, 781 S.E.2d 248 (2016). Because the majority opinion impermissibly constrains the General Assembly's constitutional authority to determine the structure of state administrative bodies, I respectfully dissent.
**423 We must resolve every separation of powers challenge "by carefully examining its specific factual and legal context." Id. at 646-47, 781 S.E.2d at 257. The type of separation of powers violation that the Governor alleges here occurs "when the actions of one branch prevent another branch from performing its constitutional duties." Id. at 645, 781 S.E.2d at 256 (citing Bacon v. Lee , 353 N.C. 696, 715, 549 S.E.2d 840, 853, cert. denied , 533 U.S. 975, 122 S.Ct. 22, 150 L.Ed.2d 804 (2001) ). When this type of violation is alleged, we must determine whether the Governor has "enough control" over administrative bodies that have final executive authority to be able to perform his constitutional duties. Id. at 646, 781 S.E.2d at 256. McCrory set forth a functional analysis to be applied in this context, one that focuses not on the precise mechanism by which the Governor's power is allegedly interfered with but instead on the extent to which the challenged legislation limits the Governor's ability to perform a core executive duty. See id. at 645-47, 781 S.E.2d at 256-57.
To determine whether the Governor had "enough control" under the circumstances of McCrory , we noted several aspects of that case that were relevant to our analysis. There, each commission created by the challenged legislation-specifically, the Coal Ash Management Commission, the Mining Commission, and the Oil and Gas Commission-"ha[d] final authority over executive branch decisions." Id. at 645, 781 S.E.2d at 256. The General Assembly appointed a majority of the voting members of each of the three commissions. See id. at 646, 781 S.E.2d at 256. And the challenged legislation allowed the Governor to remove commission members only for cause. Id. at 646, 781 S.E.2d at 257. By having majority control over commissions with final executive authority, the General Assembly prevented the Governor from performing his constitutional duty to take care that the laws be faithfully executed, and the General Assembly retained too much control over that power through its legislative appointments. Id. at 647, 781 S.E.2d at 257 (citing Bacon , 353 N.C. at 717-18, 549 S.E.2d at 854 ; and State ex rel. Wallace v. Bone , 304 N.C. 591, 608, 286 S.E.2d 79, 88 (1982) ); see also N.C. Const. art. III, § 5 (4) ("The Governor shall take care that the laws be faithfully executed.").
McCrory therefore clarified that the Governor must have "enough control" over a body with final executive authority, such as by an appropriate combination of appointment and removal powers, to ensure that the laws are faithfully executed. Contrary to what the majority suggests, however, McCrory did not mandate that the Governor be able to appoint a majority of voting members who share his views and priorities to every executive branch board or commission. Nor did it say that the Governor himself had to have "the final say on how to execute the **424 laws." Cf. McCrory , 368 N.C. at 647, 781 S.E.2d at 257 (referring to "a commission that has the final say on how to execute the laws" (emphasis added)). As the majority says, McCrory did essentially hold that legislation is unconstitutional when it "leaves the Governor with little control over the views and priorities of the [majority of] officers" on an executive branch board or commission, at least when (as in McCrory ) only one other appointing authority is selecting that entire majority. See id. at 647, 781 S.E.2d at 257. But that is just another way of saying that, in that circumstance, the Governor may not be left with a minority of appointees.
In this case, even if having to appoint half of the members of the Bipartisan State Board from a list provided by the chair of the opposition party is tantamount to those members being appointed by someone else, that *118 still leaves the Governor with the ability to appoint half of the members from his own party-not a minority. The majority purports to simply apply McCrory but, like a funhouse mirror, distorts it instead.
As the three-judge panel recognized, Session Law 2017-6 gives the Governor enough control over the Board to avoid violating the separation of powers clause. "Enough control" does not mean unlimited or unbridled control. It does not necessarily mean majority control, either. It simply means that the Governor must not be compelled to enforce laws while having little or no control over how that enforcement occurs. See id. at 647, 781 S.E.2d at 257. Here, the Board requires an affirmative vote of five of its members to take any action, Act of Apr. 11, 2017, ch. 6, sec. 4(c), 2017-2 N.C. Adv. Legis. Serv. 21, 25 (LexisNexis) (codified at N.C.G.S. § 163A-3(c) (2017) ), and the Governor has enough control over the Board because he appoints half of its members from his own political party, see id. at 23 (codified at N.C.G.S. § 163A-2(a) (2017) ). This means that the Board may not take any action without at least one vote of a member appointed by the Governor from his own party. At least one of those appointees, in other words, will cast the deciding vote when the Board is otherwise divided along party lines. Conversely, the four appointees from the Governor's party can veto any action that the opposition-party members of the Board otherwise want to take.[1]
**425 Additionally, the Governor has the exclusive power to remove members of the Bipartisan State Board for misfeasance, malfeasance, or nonfeasance. See id. at 24 (codified at N.C.G.S. § 163A-2(c) (2017) ). Although this is the same amount of removal power that the Governor had in McCrory , see 368 N.C. at 637-38, 781 S.E.2d at 251, and although it is limited to for-cause instances, this removal power is robust enough to address any concerns peculiar to this Board-namely, that Board members could violate the public trust by using their official positions for obviously malicious or purely partisan purposes. See Malfeasance , Black's Law Dictionary (10th ed. 2014) ("A wrongful, unlawful, or dishonest act; esp., wrongdoing or misconduct by a public official...."). Giving the Governor the power to remove members without cause, moreover, would leave the Board open to political coercion. Cf. Wiener v. United States , 357 U.S. 349, 353, 355-56, 78 S.Ct. 1275, 1278, 1279, 2 L.Ed.2d 1377 (1958) (reasoning that the War Claims Commission's need for insulation from political coercion weighed in favor of the President being able to remove Commission members only for cause).[2]
Let's not lose sight of the Board's purpose, which is to administer elections and adjudicate ethics complaints. The structure and makeup of the Board requires members to cooperate in a bipartisan way before taking any official action and encourages neutrality and fairness.[3] But, **426 strangely, the majority *119 opinion constitutionalizes a partisan makeup of the Bipartisan State Board, which threatens to inject political gamesmanship into the implementation of our election and ethics laws and undermines the neutrality inherent in an evenly divided bipartisan composition.
Indeed, in light of today's holding, the Federal Election Commission-which is the closest federal analogue to the Bipartisan State Board-would be unconstitutional under North Carolina law. The FEC is composed of six voting members, no more than three of whom may be from the same political party, and the voting members are appointed by the President and confirmed by the Senate. See 52 U.S.C. § 30106(a) (Supp. III 2015). Does the majority really believe that our state constitution prohibits neutral, bipartisan election boards?
It is beyond question that the courts should have "neither FORCE nor WILL but merely judgment." United States v. Hatter , 532 U.S. 557, 568, 121 S.Ct. 1782, 1791, 149 L.Ed.2d 820 (2001) (quoting The Federalist No. 78, at 465 (Alexander Hamilton) (Clinton Rossiter ed., 1961)). "Our constitutionally assigned role is limited to a determination of whether the legislation is plainly and clearly prohibited by the constitution." Hart v. State , 368 N.C. 122, 127, 774 S.E.2d 281, 285 (2015) ; see also Baker v. Martin , 330 N.C. 331, 334, 410 S.E.2d 887, 889 (1991) (explaining that legislation will not be invalidated unless it is unconstitutional "beyond reasonable doubt" (quoting Gardner v. City of Reidsville , 269 N.C. 581, 595, 153 S.E.2d 139, 150 (1967) )); State ex rel. Martin v. Preston , 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989) ("[This Court] will not lightly assume that an act of the legislature violates the ... Constitution...."). By contrast, the General Assembly acts as the "arm of the electorate," McCrory , 368 N.C. at 639, 781 S.E.2d at 252 (quoting Pope v. Easley , 354 N.C. 544, 546, 556 S.E.2d 265, 267 (2001) (per curiam)), and is constitutionally empowered to organize the departments and agencies of our state government, see N.C. Const. art. II, § 1 ; id. art. III, § 5(10) ; see also Wallace , 304 N.C. at 595-96, 286 S.E.2d at 82. The General Assembly could, of course, choose to give the Governor the ability to appoint a majority of appointees, without any constraints, to any given executive branch board or commission. But doing so is the prerogative of the General Assembly, not of the courts. See In re Alamance Cty. Ct. Facils. , 329 N.C. 84, 95, 405 S.E.2d 125, 130 (1991) ("The courts have absolutely no authority to **427 control or supervise the power vested by the Constitution in the General Assembly as a coordinate branch of the government." (quoting Person v. Bd. of State Tax Comm'rs, 184 N.C. 499, 503, 115 S.E. 336, 339 (1922) )).
I would hold that, by giving the Governor appointment and removal power over Bipartisan State Board members, and by allowing the Governor to appoint half of those members from his own political party, the General Assembly has satisfied the requirements established by our constitution. See Hart , 368 N.C. at 126, 774 S.E.2d at 284 ("If constitutional requirements are met, the wisdom of the legislation is a question for the General Assembly."); McIntyre v. Clarkson , 254 N.C. 510, 515, 119 S.E.2d 888, 891 (1961) ("The wisdom and expediency of a statute is for the legislative department, when acting entirely within constitutional limits."). The majority instead constitutionalizes a requirement that the Governor be able to appoint a majority of Bipartisan State Board members from his own political party-to a board responsible for administering our state's election and *120 ethics laws, no less.[4] By doing so, this Court has encroached on the General Assembly's constitutional authority and placed the courts in the position of micromanaging the organization and reorganization of state government. Our decision in McCrory does not compel this result, and the prudential exercise of our limited role counsels against it. "Just as the legislative and executive branches of government are expected to operate within their constitutionally defined spheres, so must the courts." Hart , 368 N.C. at 126, 774 S.E.2d at 285.[5] I therefore respectfully dissent.
Justice JACKSON joins in this dissenting opinion.

See, e.g. , Williams v. Blue Cross Blue Shield of N.C. , 357 N.C. 170, 189, 581 S.E.2d 415, 429 (2003) ("By seeking to curb unlawful discrimination by regulating covered employers, the enabling legislation and the Ordinance have the practical effect of regulating labor, as forbidden by Article II, Section 24."); State v. Elam , 302 N.C. 157, 160, 273 S.E.2d 661, 664 (1981) (noting that the General Assembly "was without authority to enact G.S. 15A-1446(d)(6) [affecting appellate rules]," as doing so violated Article IV, Section 13(2), providing that "[t]he Supreme Court shall have exclusive authority to make rules of practice and procedure for the Appellate Division" (second alteration in original) (quoting N.C. Const. art. IV, § 13 (2))); Sir Walter Lodge, No. 411, I.O.O.F. v. Swain , 217 N.C. 632, 637-38, 9 S.E.2d 365, 368-69 (1940) (General Assembly exceeded its power under Article V, Section 5 to grant tax exemptions for property held for certain purposes.); Bayard v. Singleton , 1 N.C. (Mart.) 5, 6-7 (1787) (Statute directing that suits brought by claimants of property confiscated during the American Revolution should be dismissed exceeded General Assembly's lawmaking power, as it denied the right to trial by jury guaranteed under Section IX of the Declaration of Rights in the North Carolina Constitution of 1776.).

See N.C. Const. art. III, § 5 (2) (Governor recommends to the General Assembly "such measures as he shall deem expedient."); id. art. III, § 5(3) (Governor prepares and recommends comprehensive budget to General Assembly for enactment and, after enactment, Governor shall effect the necessary economies to prevent deficits.); id. art. III, § 5(6) (Governor may grant clemency "subject to regulations prescribed by law relative to the manner of applying for pardons."); id. art. III, § 5(7) (Governor may convene General Assembly in extra session.); id. art. III, § 5(8) ("Governor shall nominate and by and with the advice and consent of a majority of the Senators appoint all officers whose appointments are not otherwise provided for."); id. art. III, § 6 (Lieutenant Governor "shall perform such additional duties as the General Assembly or the Governor may assign to him."); id. art. III, § 7(2) ("[R]espective duties [of the Council of State] shall be prescribed by law.").

Compare Piedmont Publ'g Co. v. City of Winston-Salem , 334 N.C. 595, 598, 434 S.E.2d 176, 177-78 (1993) ("One canon of construction is that when one statute deals with a particular subject matter in detail, and another statute deals with the same subject matter in general and comprehensive terms, the more specific statute will be construed as controlling."), with Preston , 325 N.C. at 449, 385 S.E.2d at 478 ("Issues concerning the proper construction of the Constitution of North Carolina 'are in the main governed by the same general principles which control in ascertaining the meaning of all written instruments.' " (quoting Perry v. Stancil , 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) )).

A coordinate branch may not encroach upon or exercise a power that the text of the state constitution expressly allocates to another branch. See, e.g. , Bacon v. Lee , 353 N.C. 696, 704, 549 S.E.2d 840, 846-47 (2001) (recognizing that any substantive review of the Governor's express constitutional authority to grant clemency would have resulted in an attempt by the judiciary to exercise a power reserved for the executive branch, thus violating separation of powers); Elam , 302 N.C. at 160, 273 S.E.2d at 664 (preventing the General Assembly from making rules for the state's appellate courts because those powers were reserved for the Supreme Court by express provision in Article IV, Section 13(2) of the state constitution ); Person v. Bd. of State Tax Comm'rs , 184 N.C. 499, 502-04, 115 S.E. 336, 339-40 (1922) (concluding that, for the judicial branch to compel the collection of taxes on stockholder income when no statute requires such a tax would interfere with the General Assembly's constitutional power of taxation); State v. Holden , 64 N.C. 829, 830 (1870) (The power to "declare a County ... in a state of insurrection, and call out the militia" "is a discretionary power, vested in the Governor by the Constitution ... and cannot be controlled by the Judiciary, but the Governor alone is responsible to the people for its proper exercise.").

The General Assembly possesses the plenary power to make law. Were the constitution silent as to which branch can by law reorganize administrative agencies, the legislative branch retains the authority to do so. See McIntyre , 254 N.C. at 515, 119 S.E.2d at 891 ("[A] State Constitution is in no matter a grant of power. All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it." (quoting Lassiter v. Northampton Cty. Bd. of Elections , 248 N.C. 102, 112, 102 S.E.2d 853, 861 (1958), aff'd , 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed. 2d 1072 (1959) )).